# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-10-00141-CR

**Wendy Dawn Holbrooks, Appellant**

**v.**

**The State of Texas, Appellee**

---

**FROM THE COUNTY COURT AT LAW NO. 1 OF WILLIAMSON COUNTY**
**NO. 09-03784-1, HONORABLE SUZANNE BROOKS, JUDGE PRESIDING**

---

## M E M O R A N D U M   O P I N I O N

A jury convicted appellant Wendy Dawn Holbrooks of the offense of harassment. *See* Tex. Penal Code Ann. § 42.07(a)(2) (West 2011). Punishment was assessed at 120 days' confinement in county jail, probated for 12 months, and a $1,000 fine. In three points of error, Holbrooks asserts that the trial court abused its discretion in denying her motion to suppress statements that she had made to police during the investigation and that the evidence is legally and factually insufficient to sustain her conviction. We will affirm the judgment of conviction.

## BACKGROUND

The jury heard evidence that on May 16, 2009, Valerie Kirby was working as a cashier at an H.E.B. in Cedar Park when Holbrooks, the wife of one of Kirby's co-workers, walked past Kirby's check-out line, called Kirby a "nasty bitch," and then left the store. According to Kirby, approximately twenty minutes later, she received a call on her cell phone from an "unknown" or

"blocked" number. Unable to answer the call at that time, Kirby let the call go to her voicemail. When Kirby later took a break, she listened to her voicemail and heard the following message, a recording of which was played for the jury:

> You better watch your back. I'm going to [expletive] you up, you nasty bitch, nasty ho. How you like you a sideline ho. You already know you are not worth a [expletive] bitch for anybody. You think a married man wants you? Not for your money. Nasty bitch. Bitch. You better watch your back. You gonna get it. You already know you gonna get it and when you least expect it you will get it, guaranteed. I'm going to [expletive] you up.

Kirby testified that she recognized the voice on the message as belonging to Holbrooks because Kirby "had spent some time with her when I went to their apartment to do her hair for her." Kirby further testified that the message made her feel threatened and caused her alarm.

After first talking to Holbrooks's husband (who denied that his wife had left the message) and then her manager, Kirby decided to report the call to the police. Officer Mike Pellegrino of the Cedar Park Police Department responded to the complaint and, after speaking with Kirby, listened to the voicemail. Pellegrino testified that he perceived the message to be threatening in nature. He also testified that when he interviewed Kirby, she did not hesitate in identifying the voice on the message as belonging to Holbrooks.

Detective Ricky Pando, who was assigned to investigate the case, also interviewed Kirby and listened to the voicemail. Pando testified that Kirby was "100 percent sure" that the voice on the message belonged to Holbrooks. Pando also testified that he perceived the message to be threatening.

2

As part of his investigation, Pando went to Holbrooks's residence with another detective and requested an interview with Holbrooks. According to Pando, Holbrooks consented to the interview, which Pando digitally recorded and a copy of which was admitted into evidence. During the interview, Pando testified, Holbrooks admitted that she had called Kirby a "nasty bitch" at the H.E.B. but initially denied calling Kirby and leaving the message. However, Pando recounted, "later in the conversation she didn't deny it any longer. Instead she downplayed the message . . . by saying, '[A]nd she was threatened by that?'" Pando added that Holbrooks also claimed during the interview that Kirby might have had an affair with and owed money to her husband. Pando further testified that after speaking with Holbrooks, he was of the opinion that it was Holbrooks who had left the message. After completing his investigation and receiving additional calls from Kirby that she remained concerned for her safety, Pando arrested Holbrooks for harassment.

The jury found Holbrooks guilty of the offense as charged and assessed punishment as noted above. This appeal followed.

## DISCUSSION

**Motion to suppress**

In her first point of error, Holbrooks asserts that the trial court abused its discretion in denying her motion to suppress statements that she had made to Detective Pando when he interviewed her at her residence. At the suppression hearing, Holbrooks argued that the statements should be suppressed because the interview was, in her view, a custodial interrogation, and she had not been advised of her legal rights prior to the interview. *See* U.S. Const. amend. V.; Tex. Code Crim. Proc. Ann. art. 38.22 (West 2005); *see also Miranda v. Arizona*, 384 U.S. 436 (1966). In

3

response, the State argued that the interview was not a custodial interrogation and that Holbrooks was free to terminate the interview and ask the officers to leave her apartment at any time. The trial court, at the conclusion of the suppression hearing, found that Holbrooks's statements "were not the result of custodial interrogation" and denied the motion to suppress Holbrooks's statements on that ground.[1]

In reviewing a trial court's ruling on a motion to suppress, "an appellate court must apply a standard of abuse of discretion and overturn the trial court's ruling only if it is outside the zone of reasonable disagreement." *Martinez v. State*, 348 S.W.3d 919, 922 (Tex. Crim. App. 2011) (citing *State v. Dixon*, 206 S.W.3d 587, 590 (Tex. Crim. App. 2006)). "The appellate court must apply a bifurcated standard of review, giving almost total deference to a trial court's determination of historic facts and mixed questions of law and fact that rely upon the credibility of a witness, but applying a de novo standard of review to pure questions of law and mixed questions that do not depend on credibility determinations." *Id*. at 922-23 (citing *Guzman v. State*, 955 S.W.2d 85, 87-89 (Tex. Crim. App. 1997)).

A trial court's ultimate custody determination presents a mixed question of law and fact. *Herrera v. State*, 241 S.W.3d 520, 526 (Tex. Crim. App. 2007). "Therefore, we afford almost total deference to a trial judge's 'custody' determination when the questions of historical fact turn

---

[1] In their briefs, the parties have characterized the issue at the suppression hearing as whether the interview was part of an investigative detention that triggered the Fourth Amendment's protection against "unreasonable searches and seizures" or was instead merely a consensual encounter with no Fourth Amendment implications. *See Crain v. State*, 315 S.W.3d 43, 48-50 (Tex. Crim. App. 2010). That issue, however, was not raised at the suppression hearing, and the trial court instead decided the custodial-interrogation issue.

on credibility and demeanor." *Id*. at 526-27 (citing *Ripkowski v. State*, 61 S.W.3d 378, 381 (Tex. Crim. App. 2001)). "Conversely, when the questions of historical fact do not turn on credibility and demeanor, we will review a trial judge's 'custody' determination de novo." *Id*. at 527.

The warnings set out in *Miranda* and Article 38.22 are required only when a person is subject to "custodial interrogation." *See* Tex. Code Crim. Proc. Ann. art. 38.22, §§ 3, 5; *Miranda*, 384 U.S. at 442-57, 467-79. "Custodial interrogation" is defined as "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." *Miranda*, 384 U.S. at 444. A person is in "custody" only if, under the circumstances, a reasonable person would believe that his freedom of movement was restrained to the degree associated with a formal arrest. *Dowthitt v. State*, 931 S.W.2d 244, 254 (Tex. Crim. App. 1996) (citing *Stansbury v. California*, 511 U.S. 318, 322 (1994)); *Bartlett v. State*, 249 S.W.3d 658, 668 (Tex. App.—Austin 2008, pet. ref'd). The "reasonable person" standard presupposes an innocent person. *Dowthitt*, 931 S.W.2d at 254 (citing *Florida v. Bostick*, 501 U.S. 429, 438 (1991)); *Bartlett*, 249 S.W.3d at 669. Moreover, the determination of custody depends on the objective circumstances of the interrogation, not the subjective views of the person being questioned or the subjective intent of the officer to arrest or not arrest. *Stansbury*, 511 U.S. at 323; *Dowthitt*, 931 S.W.2d at 254; *Bartlett*, 249 S.W.3d at 669.

The sole witness at the suppression hearing was Detective Pando, who testified that he and the other detective went to Holbrooks's residence to conduct the interview; it was not conducted at the police department. Pando noted that, when they arrived at Holbrooks's apartment,

5

she requested that she be allowed to change her clothes and was freely allowed to do so while the detectives remained outside. Pando also testified that during the interview, Holbrooks was "standing at the kitchen table" while he was "standing at the kitchen counter." Pando added that Holbrooks was freely allowed to move around her apartment, to sit "wherever she was free to sit," and to get water or whatever she needed; that she was neither under arrest nor in handcuffs; and that neither he nor the other detective displayed their weapons during the interview. Pando further testified that he told Holbrooks that she was not being charged at that time. The prosecutor also asked Pando the following question: "And while the Defendant wasn't necessarily free to leave because you were conducting an investigation, was she threatened with a trip to jail at any point imminent to that conversation?" Pando answered, "No."[2] Pando could not recall, however, whether he told Holbrooks that she was free to terminate the interview. He explained that he usually advises people that they are free to terminate the interview when he speaks with them at the police department, not at their homes.

Viewing the above evidence in the light most favorable to the trial court's ruling, the record supports the trial court's finding that Holbrooks's statements were not obtained during custodial interrogation. Although Pando could not recall whether he had told Holbrooks that she was free to terminate the interview, he did communicate to her that she was not being charged at that time. Additionally, Pando testified that the interview was at Holbrooks's residence instead of at the police department, that she was free to move around her apartment, and that the detectives did not

[2] On cross-examination, in reference to the prosecutor's comment that Holbrooks "wasn't necessarily free to leave," Pando clarified that Holbrooks was free to leave her apartment at any time and also "was free to ask us to leave."

handcuff her, display their weapons, or otherwise restrain her in any way. Thus, the record supports a finding that under the circumstances, a reasonable person would not have believed that her freedom of movement was restrained to the degree associated with a formal arrest. Accordingly, we cannot conclude that the trial court abused its discretion in denying the motion to suppress the statements Holbrooks made at her apartment. We overrule Holbrooks's first point of error.

**Sufficiency of the evidence**

As charged in this case, a person commits the offense of harassment if, with intent to harass, annoy, alarm, abuse, torment, or embarrass another, she threatens, by telephone, in a manner reasonably likely to alarm the person receiving the threat, to inflict bodily injury on the person. Tex. Penal Code Ann. § 42.07(a)(2). In her second point of error, Holbrooks asserts that the evidence is legally insufficient to prove her identity as the person who committed the offense. In her third point of error, Holbrooks claims that the evidence is "factually insufficient" to prove that the message Kirby received was threatening.[3]

In reviewing the sufficiency of the evidence to support a criminal conviction, we consider all the evidence in the light most favorable to the verdict and determine whether, based on that evidence and reasonable inferences to be drawn therefrom, a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *See Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010). This

---

[3] We no longer employ distinct legal and factual sufficiency standards when reviewing the sufficiency of the evidence to sustain a criminal conviction. *See Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010). Accordingly, we shall review Holbrooks's second and third points of error using the same standard. *See id*.

standard gives full play to the responsibility of the trier of fact to resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Jackson*, 443 U.S. at 319; *see Hooper v. State*, 214 S.W.3d 9, 15 (Tex. Crim. App. 2007). If any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt, we must uphold the verdict. *See McDuff v. State*, 939 S.W.2d 607, 614 (Tex. Crim. App. 1997); *Cuong Quoc Ly v. State*, 273 S.W.3d 778, 781 (Tex. App.—Houston [14th Dist.] 2008, pet. ref'd).

Regarding the identity of the caller, Kirby testified that she was familiar with Holbrooks's voice and that she recognized Holbrooks as the caller who had left the voicemail message. Kirby explained that she was familiar with Holbrooks's voice because prior to the incident, she had been at Holbrooks's apartment "doing [Holbrooks's] hair" for approximately three hours and that they had talked during that time. Kirby also testified that Holbrooks had called her a "nasty bitch" in person prior to the call and that the voicemail message repeated that exact phrase. Kirby further explained that the message referenced "current events that were going on" between her and Holbrooks's husband, which, she told Detective Pando, involved "some kind of cheating or an affair." The message stated, in part, the following: "You think a married man wants you? Not for your money." Pando testified that Holbrooks had talked to him "at length about some money that was owed to her [Holbrooks] from her husband" and about an affair between Kirby and Holbrooks's husband. These facts, Pando surmised, provided Holbrooks with "reason for [leaving] the message." Moreover, Pando related to the jury how Kirby had told him that she was "100 percent sure" the voice on the message belonged to Holbrooks. Officer Pellegrino similarly testified that Kirby did not hesitate in identifying Holbrooks as the caller. Also, Detective Pando

8

testified that after he had interviewed Holbrooks at her residence, he himself was of the opinion that it was Holbrooks who had left the message. Viewing the above evidence and all reasonable inferences therefrom in the light most favorable to the verdict, we conclude that a rational jury could have found beyond a reasonable doubt that Holbrooks was the person who had left the voicemail message on Kirby's cell phone. We overrule Holbrooks's second point of error.

Regarding the threatening nature of the call, the jury heard the content of the message and could reasonably infer that statements such as "You better watch your back"; "You gonna get it"; "You already know you gonna get it and when you least expect it you will get it, guaranteed"; and "I'm going to [expletive] you up" were threatening, especially when considered in light of additional evidence that Holbrooks, who apparently believed that Kirby had an affair with and owed money to her husband, had earlier that night called Kirby a "nasty bitch" in person. Kirby testified that she believed Holbrooks left the voicemail message to harass, alarm, and annoy her, and she stated she was "a little bit panicked," worried, and upset by it. Moreover, Officer Pellegrino testified that Kirby "was genuinely very concerned" by the message and "seemed afraid that [Holbrooks] would come back and attempt to make good on the threat that she had made on the voicemail." He noted that he could tell from Kirby's behavior that she felt alarmed enough to call the police to come out and investigate. Pellegrino stated that he listened to the voicemail message that night and thought the threat of bodily injury was credible and alarming—so much so that he suggested to an H.E.B. employee that he walk Kirby to her car when she got off from work at about 10:30 or 11:00 that night. Detective Pando similarly testified that when he listened to the message, he was of the opinion that it was threatening. Viewing the above evidence and all reasonable inferences therefrom

9

in the light most favorable to the verdict, we conclude that a rational jury could have found beyond a reasonable doubt that the voicemail message was threatening. We overrule Holbrooks's third point of error.

## CONCLUSION

We affirm the judgment of the trial court.

_____

Bob Pemberton, Justice

Before Chief Justice Jones, Justices Pemberton and Rose

Affirmed

Filed: June 6, 2012

Do Not Publish

10