

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

## NO. PD-1262-09

### SHELDON KEITH CRAIN, Appellant

### v.

### THE STATE OF TEXAS

### ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW
### FROM THE COURT OF APPEALS FOR THE SEVENTH DISTRICT
### POTTER COUNTY

PRICE, J., delivered the opinion of the Court in which MEYERS, WOMACK, JOHNSON, HOLCOMB, and COCHRAN, JJ., joined. COCHRAN, J., filed a concurring opinion in which HOLCOMB, J., joined. KELLER, P.J., filed a dissenting opinion in which KEASLER and HERVEY, JJ., joined. KEASLER, J., filed a dissenting opinion in which KELLER, P.J., and HERVEY, J., joined.

## O P I N I O N

In this case, there was substantial disagreement among the Justices of the Seventh

Court of Appeals with regard to whether the interaction that took place between the appellant

and a police officer was an encounter or a detention for Fourth Amendment purposes.[1] We granted the appellant's petition for discretionary review in order to resolve this important question.[2] We will reverse.

## BACKGROUND

The appellant was indicted for unlawful possession of a firearm by a felon. The weapon was found on his person when two officers patted him down, suspecting possession of marihuana. The appellant filed a pre-trial motion to suppress the evidence and, at the conclusion of the suppression hearing, the judge overruled the appellant's motion. Following a plea of guilty, the appellant was convicted of unlawful possession of a firearm by a felon.[3] The appellant pled true to an enhancement paragraph and was sentenced to six years' confinement and a $1,000 fine. The appellant preserved his right to appeal any adverse rulings resulting from his pre-trial motions.

### In the Trial Court

The evidence presented at the suppression hearing showed the following. On July 23, 2006, at approximately 12:30 a.m., Officer Dewayne Griffin of the Amarillo Police

---

[1] *Crain v. State*, No. 07-08-0224-CR, 2009 WL 2365718 (Tex. App.—Amarillo, July 31, 2009).

[2] *See* TEX. R. APP. P. 66.3 (instructing this Court to consider—in deciding whether to grant discretionary review—among others, whether: (b) there is an important question of constitutional law that should be settled by the Court of Criminal Appeals and (e) the justices of the court of appeals disagreed on a material question of law necessary to the outcome of the case). We grant review based on both considerations.

[3] *See* TEXAS PENAL CODE § 46.11.

Department, while on his way to respond to a theft call, observed the appellant walking in a residential area. Because the appellant "grabb[ed] at his waist" as Griffin drove by him in his marked patrol car, Griffin decided he would return after responding to the theft call to ask the appellant some questions. While at the theft-call scene, Griffin told back-up officer Cody Moore that he wanted to return to where he had observed a suspicious man—the appellant—walking.

After responding to the theft call, Griffin drove back to where he had seen the appellant approximately ten minutes earlier and found him walking across a yard. Griffin called out to the appellant through his rolled-down window "and asked him to come over and talk to me," and shined his patrol car's spotlight on the appellant. On cross-examination, Griffin reiterated that he had "asked" the appellant, even though he had indicated in his report that he "told him to come." Asked, "How did you ask him?", Griffin demonstrated: "Come over here and talk to me." Griffin readily acknowledged that "[t]hat sounds like an order[.]" Griffin testified that, had the appellant refused to talk to him, he would have let the appellant go, as he had not observed the appellant do anything that could be construed as criminal activity. The appellant took a couple more steps forward and stopped. Griffin then exited his vehicle and walked up to the appellant and, as he did, the appellant asked what he was doing wrong. Griffin replied that he wanted to talk to him.

However, as soon as Griffin began to talk to the appellant at approximately an arm-and-a-half's length away, Griffin smelled what he thought was the odor of recently smoked

marihuana coming from the appellant's clothes and breath. At the hearing, Griffin maintained that he detained the appellant when he began to suspect that the appellant, who showed signs of nervousness, was in possession of marihuana. As Griffin and the appellant walked toward the patrol car, without placing the appellant under arrest, Griffin held the appellant's hands behind his back. It was then that back-up officer Moore arrived in another patrol car.

Both officers patted the appellant down. Noticing a bulge under the appellant's shirt, Moore pushed on it and realized it was a pistol. Moore told Griffin that it was a gun and disarmed the appellant. The officers arrested the appellant, and a search incident to arrest revealed no additional contraband. Griffin transported the appellant to the county jail. Griffin testified that, at no time during their interaction did the appellant resist or threaten the officers in any manner that might have required them to threaten him with or make use of a taser or mace. Further, Griffin testified, he never had to tell the appellant to stop or not to run.

Ms. JoAnn Marez was an acquaintance of the appellant, and it was her yard in which Griffin found the appellant. Marez, who had been expecting the appellant that evening, testified that she saw flashing lights through her living room window and walked to the front of the house to see what was happening outside. She briefly moved the sheer curtain and observed the appellant and an officer in her front yard. Marez maintained (contrary to Griffin's testimony) that, while listening to what was happening outside her house, she heard

"stop and don't you run" and then "something about, a thousand volts or something." She then decided to sit on the couch by the door and listen, rather than continue to watch. Marez added that it was clear to her that the appellant "knew he had to stop right then. He knew don't go nowhere[,]" and that what she heard was "definitely an order . . . a command."

At the conclusion of the evidence, the trial court found that Griffin had made no display of authority until after he smelled marihuana on the appellant, and therefore, the initial interaction was a mere encounter that did not implicate the Fourth Amendment. The use of the spotlight during the initial interaction, the court held, was "a matter of practical necessity due to the time of night."[4] The trial court also concluded that Griffin's testimony was credible and resolved the conflict between what Marez testified she had heard and what Griffin stated he told the appellant, in Griffin's favor—*i.e.*, the trial court found that Griffin neither threatened the appellant with a taser nor told him to stop and not run.[5]

## On Appeal

The appellant appealed that decision to the Seventh Court of Appeals; a majority of that court affirmed, holding that Griffin's conduct would not have communicated to a reasonable person that the appellant was not free to decline Griffin's request and terminate

---

[4] *Crain*, 2009 WL 2365718, at *3.

[5] Because the trial court is the exclusive fact-finder at a suppression hearing, we defer to the trial court's express determination that Officer Griffin's testimony was very credible and, therefore, disregard Marez's statements that conflict with Griffin's. *See* n.7, *infra*. From this, it can be inferred that Griffin neither told the appellant not to run, nor did he threaten the appellant with a taser.

the encounter.[6]  The court of appeals thus concluded that the subsequent seizure of the handgun, once the encounter progressed into an investigative detention—prompted by the officer smelling marihuana on the appellant—was lawful.  Chief Justice Quinn dissented. In his dissent, Chief Justice Quinn explained that a reasonable person in the appellant's shoes would have regarded Griffin's words to the appellant as a command rather than a request to speak.  Further, explained Justice Quinn, the spotlight was the equivalent of a patrol car's emergency lights.  He noted that, combined, the two actions amounted to an announcement of authority carrying an implicit command.  Justice Quinn thus concluded that, under the circumstances, the stop was a detention rather than a mere encounter.  And because there was no reasonable suspicion at the time of the initial interaction between the officer and the appellant, the stop was illegal, and the evidence obtained as a consequence of it should have been suppressed.

We granted the appellant's petition for discretionary review to decide whether Officer Griffin detained the appellant.  We hold that the meeting amounted to a detention and reverse the judgment of the court of appeals.

## LAW AND ANALYSIS

### Standard of Review on Motion to Suppress

A trial court's ruling on a motion to suppress is reviewed on appeal for abuse of

---

[6] *Crain*, 2009 WL 2365718, at *1.

discretion.[7] The trial court is given almost complete deference in its determination of historical facts, especially if those are based on an assessment of credibility and demeanor.[8] The same deference is afforded the trial court with respect to its rulings on application of the law to questions of fact and to mixed questions of law and fact, if resolution of those questions depends on an evaluation of credibility and demeanor.[9] However, for mixed questions of law and fact that do not fall within that category, a reviewing court may conduct a *de novo* review.[10]

When the trial court does not make express findings of fact, an appellate court must view the evidence in the light most favorable to the trial court's ruling, assuming that it made any implicit findings of fact that are supported by the record.[11] An appellate court will sustain the trial court's decision if it concludes that the decision is correct on any theory of law applicable to the case.[12] The trial judge is the exclusive fact-finder at the suppression

---

[7] *State v. Dixon*, 206 S.W.3d 587, 590 (Tex. Crim. App. 2006).

[8] *St. George v. State*, 237 S.W.3d 720, 725 (Tex. Crim. App. 2007); *State v. Ross*, 32 S.W.3d 853, 856 (Tex. Crim. App. 2000); *State v. García-Cantú*, 253 S.W.3d 236, 241 (Tex. Crim. App. 2008).

[9] *Montanez v. State*, 195 S.W.3d 101, 108-09 (Tex. Crim. App. 2006).

[10] *Amador v. State*, 221 S.W.3d 666, 673 (Tex. Crim. App. 2007).

[11] *Ross*, 32 S.W.3d at 855-56.

[12] *Id*.

hearing.[13]  We review *de novo* whether the totality of circumstances is sufficient to support an officer's reasonable suspicion of criminal activity.[14]

## Detention or Encounter?

There are three distinct categories of interactions between police officers and citizens: (1) encounters, (2) investigative detentions, and (3) arrests.[15]  In determining which category an interaction falls into, courts look at the totality of the circumstances.[16]  An encounter is a consensual interaction which the citizen is free to terminate at any time.[17]  Unlike an investigative detention and an arrest, an encounter is not considered a seizure that would trigger Fourth Amendment protection.[18]  An encounter takes place when an officer approaches a citizen in a public place to ask questions, and the citizen is willing to listen and voluntarily answers.[19]

---

[13]

  *Id*. at 855.

[14]

  *Madden v. State*, 242 S.W.3d 504, 517 (Tex. Crim. App. 2007).

[15]

  *State v. Perez*, 85 S.W.3d 817, 819 (Tex. Crim. App. 2002).

[16]

  *Koteras v. State*, No.14-09-00286-R, 2010 WL 1790808, at *3 (Tex. App.—Houston [14th Dist.] May 6, 2010, no pet.);  *Gurrola v. State*, 877 S.W.2d 300, 302-03 (Tex. Crim. App. 1994).

[17]

  *Florida v. Royer*, 460 U.S. 491, 497 (1983);  *Perez*, 85 S.W.3d at 819.

[18]

  *Perez*, 85 S.W.3d at 819.

[19]

  *Perez*, 85 S.W.3d at 819; *Corbin v. State*, 85 S.W.3d 272, 276 (Tex. Crim. App. 2002) (citing *Florida v. Bostick*, 501 U.S. 429, 434 (1991)) (so long as the citizen feels that he is free to

On the other hand, an investigative detention occurs when a person yields to the police officer's show of authority under a reasonable belief that he is not free to leave.[20] When the court is conducting its determination of whether the interaction constituted an encounter or a detention, the court focuses on whether the officer conveyed a message that compliance with the officer's request was required.[21] The question is whether a reasonable person in the citizen's position would have felt free to decline the officer's requests or otherwise terminate the encounter.[22] In determining what factors may contribute to what a reasonable person might have perceived during a given interaction with an officer, the United States Supreme Court opinion in *Mendenhall* is instructive.

> Examples of circumstances that might indicate a seizure . . . would be the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the *use of language or tone of voice* indicating that compliance with the officer's request might be

---

disregard the officer and go about his business, an officer may approach and ask questions without implicating the Fourth Amendment); *Muehler v. Mena*, 544 U.S. 93 (2005) (citing *Bostick*, 501 U.S. at 434) (mere police questioning does not amount to a Fourth Amendment seizure); *U.S. v. Drayton*, 536 U.S. 194 (2002) (even when police officer lacks suspicion of criminal activity he may, among other things, pose questions to a suspect so long as he does not induce the suspect's cooperation by coercive means).

[20] *Johnson v. State*, 912 S.W.2d 227, 235 (Tex. Crim. App. 1995).

[21] *Hudson v. State*, 205 S.W.3d 600, 604 (Tex. App.—Waco 2006).

[22] *Hudson*, 205 S.W.3d at 604; *See Kaupp v. Texas*, 538 U.S. 626, 629 (2003) (a Fourth Amendment seizure occurs when, taking into account all circumstances surrounding the police-citizen interaction, "police conduct would have communicated to a reasonable person that he was not at liberty to ignore the [officer] and go about his business[]") (citing *Michigan v. Chesternut*, 486 U.S. 567, 569 (1988)); *State v. García-Cantú*, 253 S.W.3d 236, 242 (Tex. Crim. App. 2008) (same).

compelled.[23]

The State contends that the facts of this case are analogous to those in *Stewart v. State*,[24] in which we held that there was no "seizure" and, therefore, no Fourth Amendment implications. In *Stewart*, an officer shined his light into a parked van and walked toward the van upon seeing four people sitting inside it. As the officer approached, the driver got out of the van and when he did, the officer smelled burned marihuana. The driver consented to a search of the van and marihuana was found inside. This Court held that "there was no intrusion on Stewart's expectation of privacy" because Stewart exited the van without being ordered to do so, and the officer had not exercised his authority until after he smelled the marihuana.[25] We do not see how *Stewart* is factually similar to this case.

The State asserts that a reasonable person in the appellant's position would have felt free to leave because Griffin's actions did not amount to anything other than mere questioning, the interaction was only an encounter, not requiring reasonable suspicion of criminal activity. The State insists that merely shining the "patrol car spotlight on [the] appellant did not amount to a police show of authority transforming contact into a detention." Looking at the totality of the circumstances, we disagree.

---

[23] *U.S. v. Mendenhall*, 446 U.S. 544, 554 (1980) (emphasis added).

[24] *Stewart v. State*, 603 S.W.2d 861 (Tex. Crim. App. 1980).

[25] *Id.* at 862.

The appellant argues that the facts of this case are akin to those in *Hudson v. State*.[26] *Hudson* held that a pedestrian is entitled to Fourth Amendment protection as he walks down the street.[27] There, a police officer activated the patrol car's emergency lights while in close proximity to the defendant and called out to the defendant. A search of the defendant yielded drugs. The court of appeals held that the defendant had yielded to the officer's show of authority—rather than stopping on his own accord—and the interaction was thus a detention rather than an encounter. Finding no reasonable suspicion of criminal activity, the court of appeals held that the detention was illegal.[28]

In *State v. García-Cantú*, this Court distinguished the use of a patrol car spotlight from use of its emergency lights. In considering numerous cases throughout the nation, we noted that, while emergency lights are often involved in detention scenarios, spotlight use is often classified as necessary during police-citizen encounters and its use will not necessarily convert an encounter into an investigatory detention.[29] Despite this observation, we said in *García-Cantú*, "[e]ach citizen-police encounter must be factually evaluated on its own terms;

---

[26] *Hudson v. State*, 247 S.W.3d 780 (Tex. App.—Amarillo 2008, no pet.).

[27] *Id*. at 785.

[28] *Hudson*, 247 S.W.3d at 785.

[29] *García-Cantú*, 253 S.W.3d at 245; *see Franks v. State*, 241 S.W.3d 135, 142 (Tex. App.—Austin 2007, pet. ref'd.) (activating a police officer's overhead lights in a dark, unoccupied area does not necessarily amount to a detention).

there are no *per se* rules."[30]  Citing *Michigan v. Chesternut*, we continued, "The test is necessarily imprecise, because it is designed to assess the coercive effect of police conduct, taken as a whole, rather than to focus on particular details of that conduct in isolation."[31]  We then noted that, in determining whether a reasonable person would have felt free to leave, we look at the officer's conduct[32] as well as the setting in which the police-citizen interaction takes place.[33]  We also explained that, although using the spotlight alone is not enough to lead a reasonable person to think he is not free to go, use of the spotlight is *a factor* to be considered in the totality-of-the-circumstances assessment and, "combined with other circumstances, may well establish a Fourth Amendment detention."[34]

---

[30]    *García-Cantú*, 253 S.W.3d at 243.

[31]    *García-Cantú*, 253 S.W.3d at 244 (citing *Michigan v. Chesternut*, 486 U.S. 567, 573 (1988)).

[32]    *E.g., United States v. Mendenhall*, 446 U.S. 544, 554 (1980) (one factor to consider in determining if the interaction was a detention is "the use of the language or tone of voice indicating that compliance with the officer's request might be compelled");  *Orhorhaghe v. INS*, 38 F.3d 488, 495-96 (9th Cir. 1994) (finding a Fourth Amendment seizure had occurred when the tenor of the instructions the agent gave the citizen was not that used among citizens in everyday interaction, but instead was "authoritative and appeared to give [defendant] no option to refuse to comply.").

[33]    *García-Cantú*, 253 S.W.3d at 244 (citing *Michigan v. Chesternut*, 486 U.S. 567, 573 (1988)).

[34]    *García-Cantú*, 253 S.W.3d at 245 (emphasis added);  *see e.g., State v. Jestice*, 861 A.2d 1060, 1062-63 (Vt. 2004) (finding a detention implicating the Fourth Amendment where a uniformed officer parked his marked patrol car late at night in a dark lot with no one else around, left the cruiser's headlights shining in the detained couple's faces as he approached them, and asked them what they were doing).

Griffin testified that, when he returned to the area where he had first seen the appellant and found him walking across someone's yard, he activated his headlights and, through his rolled-down window, called out to the appellant, "Come over here and talk to me." The appellant took a few more steps, stopped, and turned. It was then that Griffin exited his patrol car and approached the appellant to talk to him. As Griffin approached the appellant, the appellant asked if he was doing something wrong, and Griffin replied that he just wanted to talk to him.

As stated in Justice Quinn's dissent, "[m]issing from the phrase 'come over here and talk to me' are words of contingency or option. That is, they are not a mere solicitation of cooperation. Nor do they extend any choice, explicit or implicit. Rather they are mandatory[.]"[35] Justice Quinn then provided the analogy of a parent using the same phrase with a child; such a parent would hardly expect the child to believe that he is free to ignore his parent's command. Here, however, Chief Justice Quinn emphasized that

> we do not have a mere parent . . . but rather a police officer in his marked car shining his spotlight . . . in the middle of the night. Together, those indicia fall short of suggesting that a reasonable person under the same circumstances would find it permissible to ignore the officer and leave.[36]

Justice Quinn further explained that he could see no difference between the facts of this case and an officer's act of turning on his emergency lights when trying to get a driver

---

[35] *Crain v. State*, 2009 WL 2365718, at *4 (Quinn, C.J., dissenting).

[36] *Id.*

to pull his car over. "Both serve to announce the officer's presence and carry with them an implicit command."[37] And as explained by the Amarillo Court of Appeals in *Hudson v. State*, when a person pulls over "in response to a patrol car's emergency lights rather than of his own accord, an investigatory detention has occurred . . . [,]" and the officer must have reasonable suspicion if the stop is to be legal under the Fourth Amendment.[38]

We agree with Justice Quinn and conclude that Griffin's act of shining his patrol car's overhead lights in the appellant's direction, coupled with his request-that-sounded-like-an-order, to "come over here and talk to me," caused the appellant to yield to Griffin's show of authority—a reasonable person in the appellant's shoes would not have felt free to leave or decline the officer's requests.[39] We thus hold that a detention occurred during the initial

---

[37]
  *Id.*

[38]
  *Hudson v. State*, 247 S.W.3d 780, 785 (Tex. App.—Amarillo 2008, no pet.).

[39]
  In his dissent, Judge Keasler argues that the trial court was entitled to regard Griffin's initial words to the appellant as nothing more than a request. But Griffin conceded that, though it was a request, it "sounded like an order[.]" Assuming the trial court did conclude that the statement was a request, that circumstance is not alone dispositive. A hypothetical police officer could approach a suspect with his gun drawn and pointed and *ask*, "Can we talk for a minute?" The fact that the officer *asked* would not, under the circumstances, render the contact a mere encounter rather than a detention. When looking to the *totality of circumstances*, as the Fourth Amendment requires us to do, we conclude that a reasonable person in the appellant's position would *not* have felt free to disregard the Griffin's request.

  For her part, Presiding Judge Keller argues that the appellant did not submit to a show of authority for Fourth Amendment purposes because he did not do precisely as Griffin requested/ordered him to do. She cites *California v. Hodari D.*, 499 U.S. 621, 626 (1991). But *Hodari D.* does not support the proposition that, before it can be said that a suspect has been detained for Fourth Amendment purposes, he must submit to authority in precisely the way he is ordered to. In *Hodari D.*, though he was ordered to halt, the defendant did not stop, and the question was

interaction between the appellant and Griffin. Therefore, in order for that initial interaction to have been legal, Griffin needed to have reasonable suspicion that the appellant was engaged in criminal activity at the time of his approach.

### Reasonable Suspicion

The Fourth Amendment to the United States Constitution protect citizens from unreasonable searches and seizures at the hands of government officials.[40] For government officials to be able to conduct investigative detentions, they must have reasonable suspicion founded on specific, articulable facts which, when combined with rational inferences from those facts, would lead the officer to conclude that a particular person actually is, has been, or soon will be engaged in criminal activity.[41] Articulable facts must amount to "more than a mere inarticulate hunch, suspicion, or good faith suspicion that a crime was in progress."[42] In deciding whether reasonable suspicion existed, we look at the facts available to the officer at the time of the detention.[43]

---

whether a seizure occurred "even though the subject does not yield." *Id.* Here, by contrast, it is clear enough that the appellant would not have stopped and turned around but for Griffin's request/order to "Come over here and talk to me." We think this constitutes sufficient yielding to authority to implicate the Fourth Amendment.

[40] *Wiede v. State*, 214 S.W.3d 17, 24 (Tex. Crim. App. 2007).

[41] *Castro v. State*, 227 S.W.3d 737, 741 (Tex. Crim. App. 2007); *Terry v. Ohio*, 392 U.S. 1, 21-22 (1968).

[42] *Williams v. State*, 621 S.W.2d 609, 612 (Tex. Crim. App. 1981).

[43] *Davis v. State*, 947 S.W.2d 240, 243 (Tex. Crim. App. 1997).

Griffin testified that he became suspicious of the appellant because the appellant was walking late at night in a residential area in which burglaries occurred mostly after midnight and, when the appellant saw the squad car driving past him, the appellant "grabb[ed] at his waist." This combination of circumstances motivated Griffin to return to the area after he responded to a theft call. At the time Griffin returned to talk to the appellant, he had neither any intention nor reason to arrest the appellant. No evidence was produced demonstrating that Griffin believed the appellant was engaged in criminal activity at the time he pointed the patrol car's overhead lights in the appellant's direction and demanded that he "come over here and talk to me."

During cross-examination, Griffin agreed that there were "[a] hundred different things [the appellant] could have been doing . . ." at the time he reached for his waistband and that the fact that the appellant had reached for his waistband did not necessarily mean that criminal activity was afoot. Further, testified Griffin during cross, there were no burglaries reported for that residential area on the evening of the appellant's arrest. Griffin also stated that, at the time he began walking toward the appellant he did not know whether the appellant was a resident of the house to which the yard belonged.

Neither time of day nor level of criminal activity in an area are suspicious in and of themselves; the two are merely factors to be considered in making a determination of

reasonable suspicion.[44] Neither fact proves that the suspect is engaged in any sort of criminal offense.[45] In order for these facts to affect the assessment of the suspect's actions, the surroundings must raise a suspicion that the particular person is engaged in illegal behavior.[46] Griffin did not offer any testimony that might have raised his suspicion that the appellant was engaged in criminal activity before he approached the appellant and smelled marihuana on him. We find no other indicia of reasonable suspicion on the record before us.

Under the totality of the circumstances, we hold that the circumstances apparent to Griffin at the time he shined his light on the appellant and ordered the appellant to come over to the officer and talk to him, did not provide him with reasonable suspicion to stop the appellant. The appellant was thus illegally detained in violation of his constitutional rights and the subsequent search that led Officer Moore to find a weapon on the appellant's person was the fruit of an unreasonable seizure. Therefore, the evidence obtained as a result of that search should have been suppressed.

## CONCLUSION

Viewing the totality of the circumstances in the light most favorable to the trial court's ruling, we hold that the trial court erred in concluding that a reasonable person in the

---

[44] *Scott v. State*, 549 S.W.2d 170, 172-73 (Tex. Crim. App. 1976); *Klare v. State*, 76 S.W.3d 68, 73-74 (Tex. App.—Houston [14th Dist.] 2002, pet. ref'd.).

[45] *Klare*, 76 S.W.3d at 73-75.

[46] *Id*. at 75.

appellant's position would have felt free to leave or terminate the interaction with Griffin.

We hold that Officer Griffin detained the appellant without reasonable suspicion and the trial

court therefore abused its discretion in denying the appellant's motion to suppress. We

reverse the judgment of the court of appeals and remand the cause to that court for a harm

analysis.[47]


Delivered: June 30, 2010
Publish

---

[47]

*See* TEX. R. APP. P. 44.2(a).