# NO. 12-13-00048-CR

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *MATTHEW TROY GOODSON,* *APPELLANT* | § | *APPEAL FROM THE* |
| *V.* | § | *COUNTY COURT AT LAW #2* |
| *THE STATE OF TEXAS,* *APPELLEE* | § | *HENDERSON COUNTY, TEXAS* |

*MEMORANDUM OPINION*

Matthew Troy Goodson appeals his conviction for evading arrest or detention, following which he was placed on community supervision for twelve months. In one issue, Appellant argues that the evidence is legally insufficient to support his conviction. We affirm.

## BACKGROUND

Appellant was charged by information with evading arrest or detention. Appellant pleaded "not guilty," and the matter proceeded to a bench trial.

At trial, the evidence indicated that on September 18, 2011, Log Cabin police officers Jason Perrini and Brian Huckabee responded to a report of burglary of a habitation. Huckabee interviewed a resident of the home in question, who told him that Appellant had "free reign" of the house and was the last nonfamily member present there before a money box was discovered to be missing. Huckabee testified that he was familiar with Appellant from previous encounters.[1]

Suspecting that Appellant was involved in the money box's disappearance, the officers went to the house next door where Appellant resided. Huckabee approached the front door while Perrini secured the rear of the residence. Huckabee spoke to Appellant's mother, who informed Huckabee that Appellant was not there.

---

[1] From Appellant's testimony, it is evident that these previous encounters were unamicable, but did not result in Appellant's being arrested.

As Huckabee and Perrini were leaving the property, they encountered a young boy who also lived at the residence. Huckabee asked the boy where Appellant was, and the boy answered that Appellant was inside the house. At this point, Huckabee again approached the front door while Perrini sought to secure the rear of the residence.

As Perrini approached the rear of the house, he saw Appellant standing near a fence. Perrini identified himself as a police officer. In response, Appellant jumped over the fence and ran away. Perrini shouted to Huckabee that Appellant was fleeing, and the two officers gave chase. Huckabee yelled to Appellant, "Stop, police,"[2] but Appellant continued his flight. Huckabee then shouted to Appellant that if he did not stop, "he was going to be tased." Upon hearing this, Appellant dropped to the ground, and the officers placed him under arrest. The pursuit covered approximately one hundred yards.

Following the presentation of evidence, the trial court found Appellant "guilty" as charged and sentenced him to confinement for three hundred sixty-five days. However, the trial court suspended Appellant's sentence and placed him on community supervision for twelve months. This appeal followed.

## LEGAL SUFFICIENCY

In his sole issue, Appellant argues that the evidence is legally insufficient to support his conviction. Specifically, Appellant contends there is no evidence that the officers possessed reasonable suspicion to detain him.

### Standard of Review

The *Jackson v. Virginia*[3] legal sufficiency standard is the only standard that a reviewing court should apply in determining whether the evidence is sufficient to support each element of a criminal offense that the state is required to prove beyond a reasonable doubt. *See Brooks v. State*, 323 S.W.3d 893, 895 (Tex. Crim. App. 2010). Legal sufficiency is the constitutional minimum required by the Due Process Clause of the Fourteenth Amendment to sustain a criminal conviction. *See Jackson*, 443 U.S. at 315–16, 99 S. Ct. at 2786–87; *see also Escobedo v. State*, 6 S.W.3d 1, 6 (Tex. App.–San Antonio 1999, pet. ref'd). The standard for reviewing a legal sufficiency challenge is whether any rational trier of fact could have found the essential

---

[2] Appellant testified that Huckabee called him by his first name when he ordered him to stop.

[3] 443 U.S. 307, 315–16, 99 S. Ct. 2781, 2786–87, 61 L. Ed. 2d 560 (1979).

elements of the offense beyond a reasonable doubt.  *See Jackson*, 443 U.S. at 320, 99 S. Ct. at 2789; *see also Johnson v. State*, 871 S.W.2d 183, 186 (Tex. Crim. App. 1993).  The evidence is examined in the light most favorable to the verdict.  *See Jackson*, 443 U.S. at 320, 99 S. Ct. at 2789; *Johnson*, 871 S.W.2d at 186.  A successful legal sufficiency challenge will result in rendition of an acquittal by the reviewing court.  *See Tibbs v. Florida*, 457 U.S. 31, 41–42, 102 S. Ct. 2211, 2217–18, 72 L. Ed. 2d 652 (1982).

In order to demonstrate that Appellant was guilty of evading arrest or detention, the State was required to prove beyond a reasonable doubt that Appellant intentionally fled from a person he knew to be a peace officer attempting lawfully to arrest or detain him.  *See* TEX. PENAL CODE ANN. 38.04(a) (West Supp. 2013).  Here, the evidence reflects that Perrini and Huckabee identified themselves as police officers to Appellant, who then ran away from them even after Huckabee ordered him to stop.  But Appellant argues that the officers lacked reasonable suspicion to lawfully detain him and, thus, he was entitled to decline to engage in what he characterizes as a consensual encounter with them.

## Officer-Citizen Interactions

There are three distinct categories of interactions between police officers and citizens: (1) encounters; (2) investigative detentions; and (3) arrests.  *Crain v. State*, 315 S.W.3d 43, 49 (Tex. Crim. App. 2010).  In determining which category an interaction falls into, courts look at the totality of the circumstances.  *Id.*  An encounter is a consensual interaction that the citizen is free to terminate at any time.  *See id.*; *State v. Perez*, 85 S.W.3d 817, 819 (Tex. Crim. App. 2002).  Unlike an investigative detention and an arrest, an encounter is not considered a seizure that would trigger Fourth Amendment protection.  *Perez*, 85 S.W.3d at 819.  An encounter takes place when an officer approaches a citizen in a public place to ask questions, and the citizen is willing to listen and voluntarily answers.  *Id.*

On the other hand, an investigative detention occurs when a person yields to the police officer's show of authority under a reasonable belief that he is not free to leave.  *Crain*, 315 S.W.3d at 49.  When conducting its determination of whether the interaction constituted an encounter or a detention, the court focuses on whether the officer conveyed a message that compliance with the officer's request was required.  *Id.*  The question is whether a reasonable person in the citizen's position would have felt free to decline the officer's request or otherwise terminate the encounter.  *See id.*  In determining what factors may contribute to what a

reasonable person might have perceived during a given interaction with an officer, the United States Supreme Court stated as follows:

> Examples of circumstances that might indicate a seizure . . . would be the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled.

*United States v. Mendenhall*, 446 U.S. 544, 554, 100 S. Ct. 1870, 1877, 64 L. Ed. 2d 497 (1980). Even so, each citizen-police encounter must be factually evaluated on its own terms; there are no per se rules. *Crain*, 315 S.W.3d at 50 (citing *State v. García–Cantú*, 253 S.W.3d 236, 243 (Tex. Crim. App. 2008)). The test is necessarily imprecise because it is designed to assess the coercive effect of police conduct, taken as a whole, rather than to focus on particular details of that conduct in isolation. *Crain*, 315 S.W.3d at 51. In determining whether a reasonable person would have felt free to leave, we look at the officer's conduct as well as the setting in which the police-citizen interaction takes place. *Id.*

## Reasonable Suspicion

The Fourth Amendment to the United States Constitution protects citizens from unreasonable searches and seizures at the hands of government officials. *Wiede v. State*, 214 S.W.3d 17, 24 (Tex. Crim. App. 2007). For government officials to be able to conduct investigative detentions, they must have reasonable suspicion founded on specific, articulable facts which, when combined with rational inferences from those facts, would lead the officer to conclude that a particular person actually is, has been, or soon will be engaged in criminal activity. *Terry v. Ohio*, 392 U.S. 1, 21–22, 88 S. Ct. 1868, 1880, 20 L. Ed. 2d 889 (1968); *Castro v. State*, 227 S.W.3d 737, 741 (Tex. Crim. App. 2007). Articulable facts must amount to "more than a mere inarticulate hunch, suspicion, or good faith suspicion that a crime was in progress." *Crain*, 315 S.W.3d at 52. In deciding whether reasonable suspicion existed, we look at the facts available to the officer at the time of the detention. *Id.* at 52–53.

## Discussion

In the instant case, Huckabee testified that a resident of the house in question told him that Appellant was the last nonfamily member present in the house before the cash box went missing. The record reflects that Huckabee was familiar with Appellant. The record further reflects Appellant's mother told Huckabee that Appellant was not home, but that the officers

became aware of her attempted deception when the young boy they encountered in the front yard told them Appellant was inside the house. We conclude that this evidence amounts to specific, articulable facts which, when combined with rational inferences therefrom, permitted the officers reasonably to conclude that Appellant had been engaged in criminal activity.

Furthermore, when the officers identified themselves to Appellant as police officers and Huckabee ordered him to stop, but Appellant continued his flight, he committed the crime of evading detention. Both officers testified that they identified themselves using a loud tone of voice. Given the circumstances set forth in the record, we conclude that no reasonable person could have decided that he was free to leave. Therefore, we hold that the evidence is legally sufficient to support Appellant's conviction. Appellant's sole issue is overruled.

## DISPOSITION

Having overruled Appellant's sole issue, we ***affirm*** the trial court's judgment.

**SAM GRIFFITH**
Justice

Opinion delivered July 23, 2014.
*Panel consisted of Worthen, C.J., Griffith, J., and Hoyle, J.*

(DO NOT PUBLISH)



# COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# JUDGMENT

JULY 23, 2014

NO. 12-13-00048-CR

**MATTHEW TROY GOODSON,**
Appellant
V.
**THE STATE OF TEXAS,**
Appellee

Appeal from the County Court at Law No. 2

of Henderson County, Texas (Tr.Ct.No. 2012-00376CL2)

THIS CAUSE came to be heard on the appellate record and briefs filed herein, and the same being considered, it is the opinion of this court that there was no error in the judgment.

It is therefore ORDERED, ADJUDGED and DECREED that the judgment of the court below **be in all things affirmed**, and that this decision be certified to the court below for observance.

Sam Griffith, Justice.
*Panel consisted of Worthen, C.J., Griffith, J., and Hoyle, J.*