**Opinion filed January 19, 2018**



# In The

# Eleventh Court of Appeals

_____

## No. 11-16-00016-CR

_____

## JULIO CESAR FLORES, JR., Appellant

## V.

## THE STATE OF TEXAS, Appellee

**On Appeal from the County Court at Law**
**Erath County, Texas**
**Trial Court Cause No. 45,713**

## M E M O R A N D U M   O P I N I O N

After the trial court denied Julio Cesar Flores, Jr.'s motion to suppress evidence, he pleaded guilty to the offense of misdemeanor possession of marihuana. The trial court assessed his punishment at confinement in the county jail for a term of 180 days. However, the trial court probated Appellant's sentence of confinement and placed him on community supervision for a term of six months. Appellant challenges the trial court's ruling on the motion to suppress in a single issue. We affirm.

Detective Jason Schipper of the Stephenville Police Department was the only witness that testified at the suppression hearing. At 10:30 p.m. on February 7, 2015, Detective Schipper was patrolling the east side of Stephenville. He observed a green Ford Explorer parked in the parking lot of the Stephenville Soccer Complex. Detective Schipper testified that the vehicle was parked in a dark area of the parking lot at a time when there was no activity taking place at the soccer complex. Detective Schipper parked his patrol car near the Explorer and approached the four people sitting inside of it.

Detective Schipper testified that he asked the driver what they were doing and that the driver responded that they were waiting on a phone call from a friend. Detective Schipper further testified that the driver was "fidgeting [and] avoiding eye contact." Detective Schipper noticed a pile of fresh tobacco on the ground, which from his experience indicated that it had possibly been removed from a cigar for the purpose of refilling the cigar with marihuana. He asked the driver if they had any marihuana in the vehicle, and the driver answered that they did not have any. Detective Schipper asked the question again because the driver had hesitated in answering and would not make eye contact. Detective Schipper also pointed out to the driver that his answer "was not real convincing." The driver then admitted that he had marihuana in the vehicle.

Detective Schipper requested that the driver step out of the vehicle. Detective Schipper then asked the passengers in the vehicle if they had any marihuana on them. Appellant, a passenger in the vehicle, then handed Detective Schipper a prescription bottle that had marihuana in it.

At the conclusion of Detective Schipper's direct examination, the State offered into evidence a recording of Detective Schipper's encounter with the occupants of the vehicle. The recording was taken from the dash of Detective Schipper's patrol unit. It shows him driving in a dark, open parking area.

2

Detective Schipper illuminated the Explorer with a spotlight and pulled up near the front of the Explorer. The Explorer and Detective Schipper's patrol unit were separated by what appears to be a row of utility poles used as parking stops. Detective Schipper exited his patrol car and, carrying a flashlight, walked to the Explorer. He greeted the driver by saying, "Hello, what are ya'll doing here?" The driver initially responded by saying, "Just chillin."

On cross-examination, Detective Schipper testified that he was patrolling the soccer complex "[b]ecause it's an area in the past where [he had] found people using illegal drugs [and] having sex. It's just one of those places that late at night there is generally no one down there that has a reason to be down there." Detective Schipper testified that he did not observe any criminal offenses occurring prior to getting out of his patrol car. Appellant's trial counsel[1] asked Detective Schipper the following question: "So when you shine a spotlight in a car as you're parked next to them and walk up to their door and ask for ID, in all circumstances, you would say they're not free to just ignore you and drive away, are they?" Detective Schipper replied, "I believe that would be a fair statement." Detective Schipper further replied, "I guess not," when asked if the driver was free to just ignore him and drive away when he initially approached the Explorer.

On redirect examination, Detective Schipper testified that the overhead lights on his patrol car were not activated when he stopped near the Explorer and that he did not tell the occupants that they were not free to leave. He also testified that none of the occupants asked to leave. On recross-examination, Detective Schipper testified that he did not believe that a detention was occurring when he approached the Explorer. He also testified that, had the Explorer driven off when he initially approached it, he would have permitted it to drive off without pursuing it.

---

[1]The driver also filed a motion to suppress. The trial court heard both motions to suppress in the same hearing. Accordingly, two defense attorneys participated in the hearing on the motions to suppress.

After the hearing on the motions to suppress concluded, the trial court issued a letter to the attorneys that provided the court's basis for denying the motions to suppress. The trial court informed the parties that it concluded that Detective Schipper's interaction with the occupants of the Explorer consisted of a consensual encounter rather than an investigative detention. The trial court based this determination on the fact that Detective Shipper did not display his weapon, that he did not threaten the occupants, that he did not use harsh language or touch the occupants, that he did not activate his overhead flashing lights, that he did not demand the driver to roll down his window, and that he did not park in a manner that prevented the occupants from leaving.

In a single issue on appeal, Appellant challenges the trial court's denial of his motion to suppress. He focuses his challenge on the question of whether Detective Schipper's initial contact with the occupants of the Explorer constituted a consensual encounter or a detention. We review a trial court's denial of a motion to suppress for an abuse of discretion and apply a bifurcated standard of review, affording almost complete deference to the trial court's determination of historical facts, especially when those determinations are based on assessments of credibility and demeanor. *Crain v. State*, 315 S.W.3d 43, 48 (Tex. Crim. App. 2010). We review de novo the trial court's ruling on pure questions of law, or of mixed questions of law and fact not turning on an evaluation of credibility and demeanor. *State v. Garcia-Cantu*, 253 S.W.3d 236, 241 (Tex. Crim. App. 2008)

"There are three distinct types of police-citizen interactions: (1) consensual encounters that do not implicate the Fourth Amendment; (2) investigative detentions that are Fourth Amendment seizures of limited scope and duration that must be supported by a reasonable suspicion of criminal activity; and (3) arrests, the most intrusive of Fourth Amendment seizures, that are reasonable only if supported by probable cause." *Wade v. State*, 422 S.W.3d 661, 667 (Tex. Crim. App. 2013). This

case implicates a distinction between a consensual encounter and an investigative detention. The question of whether a given set of facts amount to a consensual police-citizen encounter or a detention under the Fourth Amendment is a question of law that we review de novo. *Garcia-Cantu*, 253 S.W.3d at 241.

Not every encounter between a civilian and a police officer implicates the Fourth Amendment. *Florida v. Bostick*, 501 U.S. 429, 434 (1991). "Each citizen-police encounter must be factually evaluated on its own terms; there are no *per se* rules." *Garcia-Cantu*, 253 S.W.3d at 243. A consensual encounter does not implicate the Fourth Amendment because it is a consensual interaction, and the citizen is free to terminate the encounter at any time. *State v. Woodard*, 341 S.W.3d 404, 411 (Tex. Crim. App. 2011). A consensual encounter "takes place when an officer approaches a citizen in a public place to ask questions, and the citizen is willing to listen and voluntarily answers." *Crain*, 315 S.W.3d at 49. "On the other hand, an investigative detention occurs when a person yields to the police officer's show of authority under a reasonable belief that he is not free to leave." *Id.* So long as the person remains free to disregard the officer's questions and go about his business, the encounter is consensual and merits no further constitutional analysis. *Johnson v. State*, 912 S.W.2d 227, 235 (Tex. Crim. App. 1995).

When the court is conducting its determination of whether the interaction constituted an encounter or a detention, the court focuses on whether the officer conveyed a message that compliance with the officer's request was required. *Crain*, 315 S.W.3d at 49. The question is whether a reasonable person in the citizen's position would have felt free to decline the officer's requests or otherwise terminate the encounter. *Id.* "Courts consider the totality of the circumstances surrounding the interaction to determine whether a reasonable person in the defendant's shoes would have felt free to ignore the request or terminate the interaction." *Woodard*, 341 S.W.3d at 411 (citing *Brendlin v. California*, 551 U.S. 249, 255 (2007)). "If it

5

was an option to ignore the request or terminate the interaction, then a Fourth Amendment seizure has not occurred." *Id.* (citing *Brendlin*, 551 U.S. at 255). "The surrounding circumstances, including time and place, are taken into account, but the officer's conduct is the most important factor when deciding whether an interaction was consensual or a Fourth Amendment seizure." *Id.* (citing *Garcia-Cantu*, 253 S.W.3d at 244).

Law enforcement officers are permitted to approach individuals without probable cause or reasonable suspicion to ask questions or even to request a search. *Florida v. Royer*, 460 U.S. 491, 497–98 (1983) (holding that police officers "do not violate the Fourth Amendment by merely approaching an individual" and asking questions). Despite any inconvenience or embarrassment caused by these encounters, there is no official coercion. *Garcia-Cantu*, 253 S.W.3d at 243. Even if the officer did not tell the citizen that his request could be ignored, "the fact that the citizen complied with the request does not negate the consensual nature of the encounter." *State v. Castleberry*, 332 S.W.3d 460, 466 (Tex. Crim. App. 2011). Only when the implication arises that an officer's authority cannot be ignored, avoided, or ended, does a Fourth Amendment seizure occur. *Id.* at 466–67.

What constitutes a restraint on one's liberty, prompting a person to conclude that he is not free to leave, will vary, not only with the particular police conduct at issue, but also with the setting in which the conduct occurs. *Garcia-Cantu*, 253 S.W.3d at 244. "The officer's conduct is the primary focus, but time, place, and attendant circumstances matter as well." *Id.* "A court must step into the shoes of the defendant and determine from a common, objective perspective whether the defendant would have felt free to leave." *Id.* (quoting *United States v. Steele*, 782 F. Supp. 1301, 1309 (S.D. Ind. 1992)).

Appellant relies heavily on a response by Detective Schipper at the hearing indicating that he did not believe that the occupants of the vehicle were free to leave

when he initiated contact with them. However, Detective Schipper's subjective belief is not relevant to our inquiry because we are required to focus on the objective perspective of the defendant. *Id.* at 244 n.41. Because the Fourth Amendment test is an objective one, an officer's subjective intent is relevant only to the extent to which such an intent is communicated to the citizen. *Id.* In this case, there is no evidence that Detective Schipper communicated any statements to the occupants about his thoughts as to whether or not they were free to leave or ignore his requests.

In the past decade, the Texas Court of Criminal Appeals has addressed cases involving officers approaching citizens located inside parked vehicles. The officer in *Johnson* approached a car parked in a parking space of an apartment complex. 414 S.W.3d at 188. The court concluded that the officer's interaction with the defendant constituted a detention rather than a consensual encounter because the officer shined a "pretty darn bright" spotlight onto the defendant's vehicle, parked his police car in such a way as to partially block the defendant's vehicle, and spoke to the defendant in a "loud authoritative voice." *Id.* at 193. The court concluded that this was an interaction that a reasonable person would not feel free to terminate. *Id.*

The officer in *Garcia-Cantu* approached a vehicle parked at the end of a dead-end street at 4:00 a.m. 253 S.W.3d at 239. The officer illuminated the defendant's vehicle with a spotlight, spoke to the defendant in an authoritative and commanding voice, parked his patrol unit in a manner that "boxed in" the defendant's vehicle, and approached the defendant's vehicle in an authoritative manner and carrying a flashlight. *Id.* at 245–49. Based upon these facts, the Court of Criminal Appeals concluded that the trial court did not err in concluding that a reasonable person in the defendant's position would not have felt free to leave or terminate the encounter with the officer. *Id.* at 249.

7

The only factors in common between this case and the circumstances in *Johnson* and *Garcia-Cantu* are that Detective Schipper illuminated the Explorer with a spotlight. As noted in *Garcia-Cantu*, the use of a spotlight does not create a per se rule for or against a finding of a detention. 253 S.W.3d at 244. In this instance, the recording indicates that the area was quite dark. Accordingly, Detective Schipper's use of the spotlight would not necessarily lead to the conclusion that it constituted a show of authority but, rather, was necessary in order for the officer to determine if the Explorer was occupied. Detective Schipper also used a flashlight. However, the recording indicates that he used it to light the path that he was walking over to the Explorer. The recording also confirms the trial court's findings that Detective Schipper did not display his weapon, that he did not threaten the occupants or speak in an authoritative tone, that he did not activate his overhead lights, and that he did not park in a manner to prevent them from leaving.

We conclude that Detective Schipper's initial interaction with the occupants of the Explorer constituted a consensual encounter because we conclude that a reasonable person would have felt free to terminate the encounter at its inception. Detective Schipper's conduct did not constitute a show of authority that would have placed a reasonable person in a position of having to yield to it. *See Woodard*, 341 S.W.3d at 411. As noted by the court in *Garcia-Cantu*, the mere approach and questioning of persons seated in a parked car does not constitute a seizure. 253 S.W.3d at 243 (citing 4 Wayne R. LaFave, SEARCH AND SEIZURE § 9.4(a), at 433–35 (4th ed. 2004)). That result is not changed if the officer uses some generally accepted means of gaining the occupant's attention. *Id.*

We disagree with Appellant's contention that he was in a "Catch-22 situation" of either submitting to the officer's authority or fleeing and thereby creating reasonable suspicion for Detective Schipper to detain him. If Appellant's contention were correct, no consensual encounter would ever occur because every citizen

8

approached by an officer would have the same choice. As set forth above, courts have consistently held that an officer may approach a citizen in a public place and ask him questions. *See Crain*, 315 S.W.3d at 49. We overrule Appellant's sole issue.

*This Court's Ruling*

We affirm the judgment of the trial court.


JOHN M. BAILEY

JUSTICE

January 19, 2018

Do not publish. *See* Tex. R. App. P. 47.2(b).

Panel consists of: Willson, J.,
Bailey, J., and Wright, S.C.J.[2]

---

[2]Jim R. Wright, Senior Chief Justice (Retired), Court of Appeals, 11th District of Texas at Eastland, sitting by assignment.