

# IN THE
# TENTH COURT OF APPEALS

## No. 10-21-00109-CR

**KEVIN DALE SHEFFIELD,**

**Appellant**

**v.**

**THE STATE OF TEXAS,**

**Appellee**

### From the 413th District Court
### Johnson County, Texas
### Trial Court No. DC-F201900865

## MEMORANDUM OPINION

Kevin Dale Sheffield was convicted of three offenses:  possession of a controlled substance with intent to deliver, Texas Health and Safety Code § 481.112(d), evading arrest or detention in a vehicle, Texas Penal Code § 38.04(b)(2)(A), and unlawful possession of a firearm by a felon, Texas Penal Code § 46.04(a).  He was sentenced to 60 years, 5 years, and 10 years in prison, respectively.  Because the trial court did not abuse its discretion in denying Sheffield's motion to suppress, the trial court's judgments are affirmed.

In one issue, Sheffield contends the trial court erred in denying Sheffield's motion

to suppress. Specifically, Sheffield argues that while an initial contact by a corporal with the Johnson County Sheriff's Office may have been a reasonable investigative detention, any continued detention was unreasonable. Had he been released immediately after the initial contact, his argument continues, he would not have been pursued and stopped by another deputy, and the evidence seized would not have been discovered and, therefore, should be suppressed.

We review a trial court's ruling on a motion to suppress evidence under a bifurcated standard of review. *Lerma v. State*, 543 S.W.3d 184, 189-90 (Tex. Crim. App. 2018); *Furr v. State*, 499 S.W.3d 872, 877 (Tex. Crim. App. 2016). At a motion to suppress hearing, the trial judge is the sole trier of fact and judge of the credibility of witnesses and the weight to be given to their testimony. *Lerma*, 543 S.W.3d at 190; *State v. Ross*, 32 S.W.3d 853, 855 (Tex. Crim. App. 2000). Therefore, we afford almost complete deference to the trial court in determining historical facts—if supported by the record. *Wade v. State*, 422 S.W.3d 661, 666 (Tex. Crim. App. 2013). However, we review de novo a trial judge's application of the law of search and seizure to the facts. *Id.* at 667. When the trial court does not make explicit findings of fact, as in this case, we view the evidence in the light most favorable to the trial court's ruling and assume the trial court made implicit findings of fact supported by the record. *Lerma*, 543 S.W. 3d at 190. We will sustain the ruling of the trial court if it is correct under any applicable theory of law. *Wade*, 422 S.W.3d at 667.

There are three distinct categories of interactions between police officers and citizens: (1) encounters, (2) investigative detentions, and (3) arrests. *Crain v. State*, 315 S.W.3d 43, 49 (Tex. Crim. App. 2010). In determining which category an interaction falls

into, courts look at the totality of the circumstances. *Id*. An encounter is a consensual interaction which the citizen is free to terminate at any time. *Id*. Unlike an investigative detention and an arrest, an encounter is not considered a seizure that would trigger Fourth Amendment protection. *Id*. An encounter takes place when an officer approaches a citizen in a public place to ask questions, and the citizen is willing to listen and voluntarily answers. Id.

An investigative detention occurs, however, when a person yields to the police officer's show of authority under a reasonable belief that he is not free to leave. *Id*.; *see also Johnson v. State*, 414 S.W.3d 184, 193 (Tex. Crim. App. 2013). In determining whether the interaction constituted an encounter or a detention, courts focus on whether the officer conveyed a message that compliance with the officer's request was required—that is, whether a reasonable person in the citizen's position would have felt free to decline the officer's requests or otherwise terminate the encounter. *Id*. Examples of circumstances that might indicate a seizure would be the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled. *U.S. v. Mendenhall*, 446 U.S. 544, 554, 100 S. Ct. 1870, 64 L. Ed. 2d 497 (1980).

An investigative detention based on reasonable suspicion must be temporary and last no longer than is necessary to effectuate the purpose of the detention. *See Florida v. Royer*, 460 U.S. 491, 500, 103 S. Ct. 1319, 75 L. Ed. 2d 229 (1983). An officer may ask a defendant to identify himself during a valid investigative detention. *Baldwin v. State*, 278

S.W.3d 367, 372 (Tex. Crim. App. 2009). If an investigative stop continues indefinitely, at some point it can no longer be justified as an investigative stop. *United States v. Sharpe*, 470 U.S. 675, 685, 105 S. Ct. 1568, 1575, 84 L. Ed. 2d 605 (1985). But case law imposes no rigid time limitation, and common sense and ordinary human experience must govern over rigid criteria. *Id.* Further, if the officer develops reasonable suspicion during a valid detention that the detainee is engaged in criminal activity, prolonged or continued detention is justified. *See Haas v. State*, 172 S.W.3d 42, 52 (Tex. App.—Waco 2005, pet. ref'd).

Sheffield does not challenge the initial contact made by the corporal. Rather, he believed he should have been released shortly after the contact when, Sheffield alleges, the corporal learned he was not involved in a disturbance at a residence which was the reason the corporal had been called to that location. Sheffield contends that even the corporal's request for his identification constituted a "continued detention" and was not justified. We disagree for several reasons

A corporal with the Johnson County Sheriff's Office was dispatched to a domestic disturbance at a rural residence. Sheffield was at the residence, parked in the driveway and out of his pickup. The corporal politely asked Sheffield to step away from his vehicle as she was exiting her vehicle. She then noticed a holster on his hip and asked if there was a gun on his hip. Sheffield showed her the holster was empty and indicated it was for a bb gun. She asked whether he lived at the residence. He responded that he did not and showed her a McDonald's bag. He said he was there to bring someone at the residence something to eat. The corporal then asked if Sheffield had his driver's license,

explaining that a call was received and she needed to identify everyone there. Sheffield gave her his license, and when questioned about who lived at the residence, he stated that a female named "Dee" lived there.

While running a check on Sheffield's license for warrants, the corporal, in a conversational manner, suggested that they take the food to Dee and see what was going on. Sheffield took a drink from his pickup and started to walk with the corporal toward the residence. As Sheffield got the drink, the corporal asked Sheffield about a sign she had noticed on the residence that read, "Need to buy drugs, call Kevin…" He replied that he "had no idea." As they continued to walk toward the residence, the corporal was informed over the radio that Sheffield had outstanding warrants from the Cleburne Police Department. Without verbalizing this to Sheffield, the corporal assumed the warrants were for traffic tickets.

At about the same time as the radio dispatch, the corporal could hear arguing coming from inside the residence. She then told Sheffield to take a seat at a wooden dollhouse structure just a few steps from the front porch of the residence. He complied, and the corporal entered the residence to continue to investigate the domestic disturbance. As she made contact with a man and woman arguing inside the residence and guided them to the porch, she noticed Sheffield driving away in his pickup.

The entire interaction with Sheffield was recorded on the corporal's bodycam and lasted a little over three minutes. The corporal was the only officer on the scene, she did not display a weapon, and she did not physically touch Sheffield. Her entire demeanor was casual, conversational, and polite. And although she parked behind Sheffield's

pickup, Sheffield was not "blocked in;" he could leave simply by pulling forward and driving around the patrol vehicle through the open-spaced property—which is precisely what he did.

At the earliest, it was not until the corporal told Sheffield to have a seat, that a detention occurred, if one occurred at all. No detention continued thereafter because only moments after the corporal entered the residence, Sheffield left the scene.

However, assuming without deciding a detention occurred as soon as the corporal contacted Sheffield, as Sheffield contends, the 3-minute continued detention was justified. The corporal had been dispatched to investigate a domestic disturbance. Upon her arrival, she had no idea who Sheffield was or what role he may have played in connection with that disturbance. As she exited her patrol vehicle, she noticed a holster on Sheffield's hip. She also noticed a sign on the roof of the residence that read, "Need to buy drugs, call Kevin…" The need to identify Sheffield and his connection, if any, to the property and the reported domestic disturbance she was there to investigate was critical to properly conducting her investigation and was good police work. The corporal then discovered that Sheffield had outstanding warrants. These developments gave her reasonable suspicion that Sheffield was engaged in criminal activity which justified a short but continued detention.[1]

---

[1] Because Sheffield left the scene and having a valid reason to arrest him on the outstanding warrants, the corporal issued a BOLO for Sheffield and his vehicle. Another officer in route to assist the corporal spotted Sheffield and, after a vehicular pursuit, stopped and arrested him. The charged offenses resulted from that arrest.

Thus, viewing the evidence in the light most favorable to the trial court's ruling, the trial court did not abuse its discretion in denying Sheffield's motion to suppress, and Sheffield's sole issue is overruled.

We affirm the trial court's judgments.[2]


TOM GRAY
Chief Justice

Before Chief Justice Gray,
    Justice Johnson, and
    Justice Smith
Affirmed
Opinion delivered and filed July 26, 2023
Do not publish
[CRPM]



---

[2] Sheffield was convicted in May of 2021. In 2020, before his trial, Sheffield appealed the trial court's denial of Sheffield's application for a writ of habeas corpus based on a speedy trial complaint. That appeal was filed in this Court but transferred to the Seventh Court of Appeals in Amarillo, pursuant to an equalization order by the Texas Supreme Court. The Seventh Court of Appeals reversed the trial court's ruling on Sheffield's habeas application. The State filed a Petition for Discretionary Review with the Court of Criminal Appeals. While the petition was pending, the trial court proceeded with Sheffield's trial. He was convicted, and appealed that conviction. After one extension of 60 days to file his brief on appeal of the conviction, Sheffield requested a stay of the appeal until the Court of Criminal Appeals disposed of the State's petition regarding the habeas ruling. We granted a stay from December 14, 2021 to August 31, 2022. When the State's petition had not been disposed by the Court of Criminal Appeals, we notified Sheffield in October of 2022 that his brief was late. His brief was filed on November 16, 2022, and this appeal was placed "at issue" on December 1, 2022. The State's petition for review still had not been decided by the Court of Criminal Appeals. After our review of the issue presented by Sheffield in his appellate brief and an issue raised by the Court of Criminal Appeals on its own motion in the habeas petition for discretionary review, that is, whether the trial court had jurisdiction to proceed with Sheffield's trial on the merits, it was decided that because a disposition of this appeal may be a total waste of resources if the Court of Criminal Appeals determined the trial court had no jurisdiction to proceed with the trial, a disposition of this appeal would be postponed for jurisprudential reasons until the decision of the Court of Criminal Appeals issued. On June 21, 2023, the Court of Criminal Appeals disposed of the petition for discretionary review and decided, among other things, the trial court had jurisdiction to proceed with Sheffield's trial. This Court then proceeded to this disposition of Sheffield's appeal of his conviction.