ACCEPTED
03-14-00816-CR
5192332
THIRD COURT OF APPEALS
AUSTIN, TEXAS
5/7/2015 12:36:32 PM
JEFFREY D. KYLE
CLERK

## NO. 03-14-00816-CR

IN THE

COURT OF APPEALS

THIRD DISTRICT OF TEXAS

AUSTIN, TEXAS

FILED IN
3rd COURT OF APPEALS
AUSTIN, TEXAS
5/7/2015 12:36:32 PM
JEFFREY D. KYLE
Clerk

| | | |
|---|---|---|
| ARIANA OLIVEIRA | § | APPELLANT |
| VS. | § | |
| THE STATE OF TEXAS | § | APPELLEE |

APPEAL FROM THE COUNTY COURT AT LAW NUMBER EIGHT

TRAVIS COUNTY, TEXAS

CAUSE NO. C-1-CR-14-209113

APPELLANT'S BRIEF

JOSHUA D. SAEGERT
Law Office of Joshua D. Saegert
609 W. 9th Street
Austin, Texas 78701
Phone: (512) 371-3477
Fax: (512) 236-9287
saegertlaw@yahoo.com
State Bar No. 90001888
ATTORNEY FOR DEFENDANT

**Oral Argument Requested**

## IDENTITY OF PARTIES AND COUNSEL

Ariana Oliveira
2709 Barton Point Dr.
Austin, Texas 78733
**Appellant**

Joshua D. Saegert
609 W. 9th Street
Austin, Texas 78701
**Appellate Attorney for Appellant**

Joshua D. Saegert
609 W. 9th St.
Austin, TX 78701
**Trial Attorney for Appellant**

Allison Tisdale
Travis County Attorney's Office
P.O. Box 1748
Austin, Texas 78767
**Trial Attorney for the State**

Stephen H. Capelle
Travis County Attorney's Office
P. O. Box 1748
Austin, TX 78767
**Appellate Attorney for the State**

Lisa C. McMinn
Travis County Attorney's Office
P. O. Box 1748
Austin, TX 78767
**Appellate Attorney for the State**

David A. Escamilla
Travis County Attorney's Office
P. O. Box 1748
Austin, TX 78767
**Appellate Attorney for the State**

The Honorable Carlos Barrera
County Court at Law Number Eight
P.O. Box 1748
Austin, Texas 78767
**Trial Judge**

# TABLE OF CONTENTS

IDENTITY OF PARTIES AND COUNSEL ........................................................ i

TABLE OF AUTHORITIES ........................................................................ iv

STATEMENT OF THE CASE ...................................................................... vi

STATEMENT REGARDING ORAL ARGUMENT ......................................... vii

ISSUE PRESENTED ................................................................................ viii

STATEMENT OF FACTS ........................................................................... 2

SUMMARY OF THE ARGUMENT ............................................................... 3

POINT OF ERROR .................................................................................... 3

     THE TRIAL COURT ERRED IN OVERRULING APPELLANT'S
     MOTION TO SUPPRESS EVIDENCE BECAUSE NO
     REASONABLE PERSON WOULD HAVE FELT FREE TO LEAVE
     WHEN THE OFFICER SIGNALED THAT THE APPELLANT
     WAS DETAINED BY USING HIS OVERHEAD RED AND BLUE
     LIGHTS, AND THERE WAS NOT REASONABLE SUSPICION
     TO SUPPORT THE DETENTION. ............................................................ 3

PRAYER .................................................................................................. 11

CERTIFICATE OF SERVICE ..................................................................... 12

CERTIFICATE OF COMPLIANCE .............................................................. 12

# TABLE OF AUTHORITIES

**Cases**

*Amador v. State,* 221 S.W.3d 666 (Tex. Crim. App. 2007)..................................4-5

*Corbin v. State,* 85 S.W.3d 272 (Tex. Crim. App. 2002) ................................ 8

*Crain v. State,* 315 S.W.3d 43 (Tex. Crim. App. 2010) ................................6, 9-10

*Estrada v. State,* 154 S.W.3d 604 (Tex. Crim. App. 2005)................................ 5

*Florida v. Bostick,* 501 U.S. 429 (1991)................................................................ 7

*Guinn v. State,* 1998 WL 418034 (Tex. App.—Houston[1st Dist.] 1998, no pet.)...9

*Guzman v. State,* 955 S.W.2d 85 (Tex. Crim. App. 1997) ................................ 4

*Johnson v. State,* 68 S.W.3d 644 (Tex. Crim. App. 2002) ................................4-5

*Kaupp v. Texas,* 538 U.S. 626 (2003)................................................................6-7

*Madden v. State,* 242 S.W.3d 504 (Tex. Crim. App. 2007)................................ 5

*Montanez v. State,* 195 S.W.3d 101 (Tex. Crim. App.2006)................................ 4

*Romero v. State,* 800 S.W.2d 539 (Tex. Crim. App.1990) ................................ 4

*State v. Garcia-Cantu,* 253 S.W.3d 236 (Tex. Crim. App. 2008) ................6-7, 9

*State v. Kelly,* 204 S.W.3d 808 (Tex. Crim. App. 2006) ................................ 5

*State v. Ross,* 32 S.W.3d 853 (Tex. Crim. App. 2000), *modified on other grounds*
    *by State v. Cullen,* 195 S.W.3d 696 (Tex. Crim. App. 2006)................................ 4

*Terry v. Ohio,* 392 U.S. 1 (1968) ................................................................ 6

*United States v. Steele,* 782 F.Supp. 1301 (S.D.Ind.1992) ................................ 7

*Wiede v. State,* 214 S.W.3d 17 (Tex. Crim. App. 2007)................................4-5

**Statutes**

TEX. CODE CRIM. PROC. ART. 14.01................................................................ 9

TEX. TRANS. CODE §543.001........................................................................... 9

TEX. TRANS. CODE §543.004........................................................................... 9

TEX. TRANS. CODE §542.501........................................................................... 9

TEX. CONST. ART. I, §9.................................................................................... 6

U.S. CONST. AMEND. 4 .................................................................................... 6

# STATEMENT OF THE CASE

*Nature of the case:*

On July 7, 2014, the Travis County Attorney filed an information alleging that Appellant committed the offense of Driving While Intoxicated on or about June 6, 2014. CR 16.

*Course of proceedings:*

Appellant filed a motion to suppress evidence on October 7, 2014. CR 30-34. A hearing on this motion was held on October 29, 2014. RR II. The trial court denied Appellant's motion to suppress on November 14, 2014. RR III 4. The court issued Findings of Fact and Conclusions of Law explaining its decision. CR 85-86.

*Disposition of the case:*

Following the denial of her motion to suppress evidence, Appellant pleaded "no contest." CR 90-91. The trial court found Appellant guilty of this offense and sentenced her to 180 days in jail probated for 2 years. CR 92-93. The trial court certified that Appellant had the right to appeal its ruling on the motion to suppress. CR 105. Appellant timely filed her notice of appeal on December 29, 2014. CR 102-103.

## STATEMENT REGARDING ORAL ARGUMENT

Appellant requests oral argument because she believes that it would aid in this Court's decision process. The resolution of the issue on appeal turns on whether an officer can detain a person solely because their vehicle is stopped on the side of the road. Oral argument would assist in clarifying when an officer can detain a citizen solely to investigate without any articulable facts that criminal activity is taking place.

## ISSUE PRESENTED

When a police officer pulls behind a vehicle that is parked on the side of the road and turns on his overhead red and blue lights, would a reasonable person believe that she was free to leave.

NO. 03-14-00816-CR

IN THE

COURT OF APPEALS

THIRD DISTRICT OF TEXAS

AUSTIN, TEXAS

| ARIANA OLIVEIRA | § | APPELLANT |
|---|---|---|
| VS. | § | |
| THE STATE OF TEXAS | § | APPELLEE |

APPEAL FROM THE COUNTY COURT AT LAW NUMBER EIGHT

TRAVIS COUNTY, TEXAS

CAUSE NO. C-1-CR-14-209113

**TO THE HONORABLE COURT OF APPEALS:**

COMES NOW Appellant Ariana Oliveira, by and through her undersigned counsel, and offers this Appellant's Brief. Appellant would respectfully show the Court the following:

1

# STATEMENT OF FACTS

Austin Police Officer Bryce Sakamoto testified that he was on duty on June 6th 2014 and arrested the Appellant Ariana Oliveira for Driving While Intoxicated. RR II 6. Officer Sakamoto was driving southbound on the IH-35 frontage road when he saw Appellant's vehicle on Old San Antonio road, just west of the IH-35 frontage road. The vehicle was running, the headlights were on and it was stopped in the dirt embankment on the side of Old San Antonio road. RR II 7. He pulled behind her, turned on his overhead lights and detained her. RR II 7-8. He had observed no moving violations. RR II 10. Officer Sakamoto testified that it took approximately ten seconds from the time he saw her vehicle until he pulled behind her and turned on his overhead lights. RR II 11. During that ten second observation period, he did not have any reason to believe criminal activity was taking place. RR II 11. Officer Sakamoto further testified that once he turned on his overhead lights, she was not free to leave. RR II 12. He testified to be clear for the court, she was detained. RR II 13. Officer Sakamoto did not see anyone in distress. RR II 19. There were other vehicles that passed by during his detention of Appellant, and there was some lighting coming from the nearby shopping center. RR II 14-15, 19. This was an area that Officer Sakamoto was familiar with and there was no evidence that this was a high crime area. RR II 21. He

2

approached Miss Oliveira's vehicle with her inside. After speaking with her he suspected that she might be intoxicated and began a criminal investigation. RR II 24. Based on the subsequent investigation the Appellant was arrested for DWI.

## SUMMARY OF THE ARGUMENT

The trial court erred in overruling Appellant's motion to suppress all evidence derived from the illegal detention of her vehicle. No reasonable person would have felt free to leave when a police officer pulls his car behind a car and turns on his red and blue overhead lights. In fact, disobeying the officer's command to stop would have been an arrestable offense. As a result, an investigative detention occurred when Officer Sakamoto stopped Appellant. Because there were no articulable facts supporting reasonable suspicion for this detention, the trial court should have granted Appellant's motion to suppress.

## POINT OF ERROR

THE TRIAL COURT ERRED IN OVERRULING APPELLANT'S MOTION TO SUPPRESS EVIDENCE BECAUSE NO REASONABLE PERSON WOULD HAVE FELT FREE TO LEAVE WHEN THE OFFICER SIGNALLED THAT THE APPELLANT WAS DETAINED BY USING HIS OVERHEAD RED AND BLUE LIGHTS, AND THERE WAS NOT REASONABLE SUSPICION TO SUPPORT THE DETENTION.

3

## Argument and Authorities

An appellate court reviews a trial court's ruling on a motion to suppress evidence under a bifurcated standard of review. *Amador v. State,* 221 S.W.3d 666, 673 (Tex. Crim. App. 2007); *Guzman v. State,* 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). In reviewing the trial court's decision, the reviewing court does not engage in its own factual review. *Romero v. State,* 800 S.W.2d 539, 543 (Tex. Crim. App.1990). As the sole trier of fact, the trial judge is in the best position to assess the credibility of the witnesses and the weight to be given their testimony. *Wiede v. State,* 214 S.W.3d 17, 24–25 (Tex. Crim. App. 2007); *State v. Ross,* 32 S.W.3d 853, 855 (Tex. Crim. App. 2000), *modified on other grounds by State v. Cullen,* 195 S.W.3d 696 (Tex. Crim. App. 2006). Therefore, a reviewing court gives almost total deference to the trial court's rulings on (1) questions of historical fact, even if the trial court's determination of those facts was not based on an evaluation of credibility and demeanor, and (2) application-of-law-to-fact questions that turn on an evaluation of credibility and demeanor. *Amador,* 221 S.W.3d at 673; *Montanez v. State,* 195 S.W.3d 101, 108–09 (Tex. Crim. App.2006); *Johnson v. State,* 68 S.W.3d 644, 652–53 (Tex. Crim. App. 2002). However, when application-of-law-to-fact questions do not turn on the credibility and demeanor of the witnesses, the appellate court reviews the trial court's rulings

on those questions *de novo*. *Amador,* 221 S.W.3d at 673; *Estrada v. State,* 154 S.W.3d 604, 607 (Tex. Crim. App. 2005); *Johnson,* 68 S.W.3d at 652–53.

Stated another way, when reviewing the trial court's ruling on a motion to suppress, this Court should view the evidence in the light most favorable to the trial court's ruling. *Wiede,* 214 S.W.3d at 24; *State v. Kelly,* 204 S.W.3d 808, 818 (Tex. Crim. App. 2006). When the trial court makes explicit fact findings, this Court determines whether the evidence, when viewed in the light most favorable to the trial court's ruling, supports those factual findings. *Kelly,* 204 S.W.3d at 818–19. This Court should then review the trial court's legal ruling *de novo* unless its explicit fact findings that are supported by the record are also dispositive of the legal ruling. *Id.* at 819.

Here, the trial court's factual findings are not dispositive of the legal ruling (*i.e.,* whether a reasonable person would have felt free to leave when Officer Sakamoto signaled that the Appellant was detained by using his overhead red and blue lights). As a result, this Court should conduct a *de novo* review of the trial court's application of the law to the facts of the case. *See Madden v. State,* 242 S.W.3d 504, 517 (Tex. Crim. App. 2007) (reviewing *de novo* whether the totality of the circumstances was sufficient to support an officer's reasonable suspicion of criminal activity).

5

There are three distinct categories of interactions between citizens and police officers: (1) consensual encounters, (2) investigative detentions, and (3) arrests. *Crain v. State*, 315 S.W.3d 43, 49 (Tex. Crim. App. 2010). While a consensual encounter is not subject to constitutional scrutiny, a detention constitutes a "seizure" under both the United States and Texas constitutions. *See* TEX.CONST. ART. I, §9; *see also* U.S.CONST.AMEND. 4; *see also Crain*, 315 S.W.3d at 49; *see also State v. Garcia-Cantu*, 253 S.W.3d 236, 242 (Tex. Crim. App. 2008). Because an encounter is consensual by nature, a citizen is free to terminate it at any time. *Crain*, 315 S.W.3d at 49. "An encounter takes place when an officer approaches a citizen in a public place to ask questions, and the citizen is willing to listen and voluntarily answers." *Id.* Meanwhile, "an investigative detention occurs when a person yields to the police officer's show of authority under a reasonable belief that he is not free to leave." *Id.*; *see also Terry v. Ohio*, 392 U.S. 1, 19 n.16 (1968) (a seizure occurs when an officer, "by means of physical force or show of authority, has in some way restrained the liberty of a citizen").

In analyzing the question of whether a seizure has occurred, courts consider all of the circumstances surrounding the encounter. *Garcia-Cantu*, 253 S.W.3d at 242; *see also Kaupp v. Texas*, 538 U.S. 626, 629 (2003). While the officer's conduct is the primary focus of the inquiry, the time, place, and attendant circumstances are also important considerations. *Id.* at 244. "A court must step

6

into the shoes of the defendant and determine from a common, objective perspective whether the defendant would have felt free to leave." *Id.* at 244 (quoting *United States v. Steele,* 782 F.Supp. 1301, 1309 (S.D.Ind.1992). This reasonable-person test is both objective and fact specific; moreover, it presupposes an innocent person. *Id.* at 243.

A seizure has occurred if "the police conduct would have communicated to a reasonable person that the person was not free to decline the officers' requests or otherwise terminate the encounter." *Garcia-Cantu,* 253 S.W.3d at 242 (citing *Florida v. Bostick,* 501 U.S. 429, 439 (1991)). The Court of Criminal Appeals succinctly describes the core issue in this type of case:

> It is the display of official authority and the implication that this authority cannot be ignored, avoided, or terminated, that results in a Fourth Amendment seizure. At bottom, the issue is whether the surroundings and the words or actions of the officer and his associates communicate the message of "We Who Must Be Obeyed."
> *Id.* at 243

Turning to the case at bar, the trial court incorrectly concluded that Officer Sakamoto's conduct was consistent with a consensual e ncounter rather than a detention. CR 85-86. Contrary to the trial court's conclusion, the undisputed facts demonstrate that a reasonable person would have yielded to the officer's display of authority.

7

The attendant circumstances are critical in analyzing how a reasonable person would have responded to Officer Sakamoto's show of authority. The time was 1:45 am, and Appellant had pulled over and parked on the side of the road to check her GPS for directions.

Appellant had pulled off of the IH-35 frontage road and then off of the side road so that she could safely stop her vehicle and check her GPS monitor for directions. There was lighting coming from the nearby shopping center and other vehicles are seen drving by during the encounter. It was not a dark and dangerous place in a high crime area. Appellant nor her vehicle displayed any signs of distress or criminal activity prior to Officer Sakamoto detaining her.

At the hearing, on re-direct by the state, Officer Sakamoto disingenuously suggested that Appellant was free to leave prior to his contact with her. RR II 22. This is despite the fact that he had previously testified that she was detained when he turned on his overhead red and blue lights, and not free to leave. RR II 12. Regardless, Officer Sakamoto's contradictory statements are irrelevant because the analysis proceeds from the perspective of a reasonable person in Appellant's shoes. When a police car pulls behind you in the middle of the night and activates his overhead red and blue lights, no reasonable person would have felt free to leave after Officer Sakamoto exercised his authority.

In fact, Appellant would have committed a criminal offense if she had not obeyed Officer Sakamoto's show of authority. *See* TEX. TRANS. CODE §542.501 ("Obedience Required to Police Officers and to School Crossing Guards"). According to this statute, "a person may not willfully fail or refuse to comply with a lawful order or direction of a police officer." *Id.* Violating this statute gives officers authority to stop, investigate, and arrest. *See* TEX. TRANS. CODE §§543.001, 543.004 (authorizing custodial arrest for traffic offenses other than speeding or open container); *see also* TEX. CODE CRIM. PROC. ART. 14.01 (authorizing arrest for offense within an officer's presence); *see also Guinn v. State*, 1998 WL 418034, at *1 (Tex. App.—Houston[1st Dist.] 1998, no pet.) (holding that a violation of TEX. TRANS. CODE §542.501 gives officers authority to detain or arrest the violator).

Significantly, the test proceeds from the perspective of a reasonable, innocent person. *State v. Garcia-Cantu*, 253 S.W.3d 236, 243 (Tex. Crim. App. 2008). No innocent person would leave in this situation, as that action would provide the police with cause to arrest that person pursuant to TEX. TRANS. CODE §542.501. Thus, a reasonable, innocent person had but one choice: obey the officer's order.

*Crain v. State* is squarely on point. *See* 315 S.W.3d 43 (Tex. Crim. App. 2010). In that case, the officer testified that upon observing the defendant, he

9

activated his headlights and called out to him: "Come over here and talk to me." *Id.* at 51. The defendant complied by taking a few steps and then stopping. *Id.* The officer further testified that he would have let the man go if he had not complied with his command, as he had not observed anything that could be construed as illegal activity. *Id.* at 47. Upon approaching the man, the officer smelled marijuana and an investigative detention ensued. *Id.* Emphasizing the mandatory nature of the officer's command, the Court of Criminal Appeals held that an investigative detention, as opposed to a consensual encounter, had occurred. *Id.* at 51-52.

Judge Cochran's analysis of the difference between a "request" and an "order" is particularly applicable here:

> Under the Fourth Amendment, there is a world of difference between an officer's request and his order. A request signifies a consensual encounter beyond the purview of the Fourth Amendment; a command, if heeded, usually denotes a Fourth Amendment detention. A request is a question that asks for an answer; an order is a command which requires obedience.
> *Crain,* 315 S.W.3d at 54-55 (Tex. Crim. App. 2010) (Cochran, J., concurring) (citations omitted)

Like the officer in *Crain,* Officer Sakamoto issued an order when he used red and blue overhead lights to detain Appellant. Also, as in *Crain,* the officer's headlights were activated at night. In this climate, Officer Sakamoto's conduct cannot be construed as a mere request that a reasonable person would have felt free to ignore.

Instead, it constituted an order requiring obedience. Appellant did what any reasonable person would have done when the police pull behind you and activate their overhead red and blue lights: she stayed put, and rolled down her window to answer Officer Sakamoto's questions.

Prior to Officer Sakamoto's contact with Appellant, he did not observe Appellant commit a traffic violation and he did not testify about any other information that indicated that Appellant was engaged in criminal activity. As a result, there was not reasonable suspicion to support the investigative detention.

Because Appellant was detained without reasonable suspicion of illegal activity, this Court should reverse the trial court's order denying her motion to suppress evidence.

## PRAYER

WHEREFORE, PREMISES CONSIDERED, Appellant prays that this Court sustain her point of error, reverse the trial court's judgment of conviction, direct the trial court to grant Appellant's motion to suppress all evidence derived from the unlawful stop, and remand for a new trial.

11

Respectfully submitted,

JOSHUA D. SAEGERT
Law Office of Joshua D. Saegert
609 W. 9th Street
Austin, Texas 78701
Phone: (512) 371-3477
Fax: (512) 236-9287
State Bar No. 90001888
ATTORNEY FOR APPELLANT

## CERTIFICATE OF SERVICE

This is to certify that the above Appellant's brief has been served on the State's attorney by hand-delivering a copy to David A. Escamilla, Travis County Attorney, 314 W. 11th St., Austin, Texas, 78701, on this 7th day of May, 2015.

Joshua D. Saegert

## CERTIFICATE OF COMPLIANCE

This is to certify that the above Appellant's brief complies with the length requirements of TEX. R. APP. PROC. 9.4(i)(2) because it contains 3,305 words.

Joshua D. Saegert

12