PD-1639-15
COURT OF CRIMINAL APPEALS
AUSTIN, TEXAS
Transmitted 12/17/2015 3:03:14 PM
Accepted 12/19/2015 9:24:22 AM
ABEL ACOSTA
CLERK

NO. _____

IN THE

COURT OF CRIMINAL APPEALS OF TEXAS

AUSTIN, TEXAS

| | | |
|---|---|---|
| JOSEPH TIMOTHY SHIMKO | § | PETITIONER-APPELLANT |
| v. | § | |
| THE STATE OF TEXAS | § | RESPONDENT-APPELLEE |

FROM THE THIRD COURT OF APPEALS, AUSTIN, TEXAS
CASE NO. 03-13-00403-CR

ON APPEAL FROM THE COUNTY COURT AT LAW #5
TRAVIS COUNTY, TEXAS
CAUSE NUMBER C-1-CR-12-215308

PETITION FOR DISCRETIONARY REVIEW

CHRISTOPHER M. PERRI
Law Office of Christopher M. Perri
1504 West Ave.
Austin, Texas 78701
(512) 917-4378
Fax No. (512) 474-8252
chris@chrisperrilaw.com
State Bar No. 24047769
COUNSEL FOR PETITIONER

FILED IN
COURT OF CRIMINAL APPEALS

December 18, 2015

ABEL ACOSTA, CLERK

**ORAL ARGUMENT REQUESTED**

# IDENTITY OF PARTIES AND COUNSEL

| | |
|---|---|
| PETITIONER-APPELLANT | Joseph Timothy Shimko<br>(Defendant in the Trial Court) |
| COUNSEL FOR PETITIONER<br>IN THE APPELLATE COURTS | Christopher M. Perri<br>1504 West Ave.<br>Austin, Texas 78701 |
| COUNSEL FOR PETITIONER<br>IN THE TRIAL COURT | Channing C. Neary<br>1220 Colorado St., #700<br>Austin, Texas 78701 |
| RESPONDENT-APPELLEE | The State of Texas |
| COUNSEL FOR RESPONDENT<br>IN THE TRIAL COURT | George Thomas<br>Assistant Travis County Attorney<br>P.O. Box 1748<br>Austin, Texas 78767 |
| COUNSEL FOR RESPONDENT<br>IN THE APPELLATE COURTS | Giselle Horton<br>Assistant Travis County Attorney<br>P.O. Box 1748<br>Austin, Texas 78767 |

# TABLE OF CONTENTS

IDENTITY OF PARTIES AND COUNSEL ........................................................... i

INDEX OF AUTHORITIES.......................................................................... iii

STATEMENT REGARDING ORAL ARGUMENT ................................................v

STATEMENT OF THE CASE.......................................................................... vi

STATEMENT OF PROCEDURAL HISTORY....................................................... vii

GROUND FOR REVIEW ............................................................................ viii

RELEVANT FACTS .......................................................................................1

ARGUMENT AND AUTHORITIES....................................................................3

PRAYER ..................................................................................................10

CERTIFICATE OF SERVICE .........................................................................11

CERTIFICATE OF COMPLIANCE..................................................................12

APPENDIX…………………………………………………………………….13

# INDEX OF AUTHORITIES

**Cases**

*Amador v. State,* 221 S.W.3d 666, 673 (Tex. Crim. App. 2007)............................3-4

*Crain v. State*, 315 S.W.3d 43, 49 (Tex. Crim. App. 2010) ..............................4-5, 9

*Estrada v. State,* 154 S.W.3d 604, 607 (Tex. Crim. App. 2005)...............................4

*Florida v. Bostick*, 501 U.S. 429, 439 (1991)..............................................................6

*Guinn v. State*, 1998 WL 418034, at *1 (Tex. App.—Houston[1st Dist.] 1998, no pet.) ......................................................................................................................8

*Guzman v. State,* 955 S.W.2d 85, 89 (Tex. Crim. App. 1997) .................................3

*Johnson v. State,* 68 S.W.3d 644, 652–53 (Tex. Crim. App. 2002) .........................4

*Kaupp v. Texas*, 538 U.S. 626, 629 (2003) ...............................................................5

*Montanez v. State,* 195 S.W.3d 101, 108–09 (Tex. Crim. App.2006).......................4

*Romero v. State,* 800 S.W.2d 539, 543 (Tex. Crim. App.1990)................................3

*State v. Garcia-Cantu*, 253 S.W.3d 236, 241 (Tex. Crim. App. 2008) ............. 4-6, 8

*State v. Ross,* 32 S.W.3d 853, 855 (Tex. Crim. App. 2000), *modified on other grounds by State v. Cullen,* 195 S.W.3d 696 (Tex. Crim. App. 2006) ............. 3-4

*Terry v. Ohio*, 392 U.S. 1, 19 n.16 (1968) ...............................................................5

*United States v. Steele,* 782 F.Supp. 1301, 1309 (S.D.Ind.1992).............................5

*Wiede v. State,* 214 S.W.3d 17, 24–25 (Tex. Crim. App. 2007) ...............................3

## Statutes

TEX. CODE CRIM. PROC. ART. 14.01 ........................................................................8

TEX. R. APP. PROC. 66.3 ......................................................................................1, 10

TEX. TRANS. CODE §543.001 ..................................................................................8

TEX. TRANS. CODE §543.004 ..................................................................................8

TEX. TRANS. CODE §542.501 ............................................................................... 8-9

TEX.CONST. ART. I, §9 ........................................................................................ 4-5

U.S.CONST.AMEND. 4...............................................................................................5

## STATEMENT REGARDING ORAL ARGUMENT

Petitioner requests oral argument because he believes that it would aid in this Court's decisional process. The resolution of the issue on appeal turns on whether a reasonable person would have felt free to leave when a police officer flagged down that person's vehicle. Oral argument would assist in drawing the line between a consensual encounter and an investigative detention.

## STATEMENT OF THE CASE

On October 25, 2012, the Travis County Attorney filed an information alleging that Petitioner committed the offense of Driving While Intoxicated on or about September 12, 2012. CR 15. Petitioner filed a motion to suppress evidence on January 22, 2013. CR 56. A hearing on this motion was held on April 9, 2013. RR I 1. The trial court denied Petitioner's motion to suppress on April 15, 2013. CR 59. The court issued Findings of Fact and Conclusions of Law explaining its decision. CR 64. Following the denial of his motion to suppress evidence, Petitioner pleaded "no contest." CR 69. The trial court found Petitioner guilty of this offense and sentenced him to three days in the Travis County Jail. CR 70. The trial court certified that Petitioner had the right to appeal its ruling on the motion to suppress. CR 67. Petitioner timely filed his notice of appeal on June 3, 2013. CR 75, 81.

# STATEMENT OF PROCEDURAL HISTORY

(1) The Third Court of Appeals affirmed the trial court's judgment on May 21, 2015. Justice Field wrote the memorandum opinion, joined by Justices Pemberton and Bourland. App. A. On November 25, 2015, following the filing of a motion for *en banc* reconsideration, this same panel of justices reheard the case, withdrew its original opinion, and substituted a second opinion affirming the trial court's judgment. Justice Field also wrote the second opinion. App. B.

(2) Petitioner filed a motion for *en banc* reconsideration on June 3, 2015.

(3) Petitioner's motion for *en banc* reconsideration was denied on November 25, 2015.

## GROUND FOR REVIEW

When a police officer signals for a person to stop and that person would commit a crime by failing to obey the officer's command, would a reasonable person believe that he is free to leave? RR II 6-8.

**TO THE HONORABLE COURT OF CRIMINAL APPEALS OF TEXAS:**

COMES NOW Petitioner Joseph Timothy Shimko, by and through his undersigned counsel, and offers this Petition for Discretionary Review. In this case, a police officer used hand motions and his voice to order Petitioner to stop his vehicle. In holding that a reasonable person would have felt free to ignore the officer's show of authority, the court of appeals has decided an important question of state and federal law in a way that conflicts with the applicable decisions of this Court. *See* TEX. R. APP. PROC. 66.3(a),(b),&(e).

## RELEVANT FACTS

On September 12, 2012, Deputy Jeff Ford of the Travis County Sheriff's Office arrived at the parking lot of Little Woodrow's in North Austin, where he came into contact with Scott Williamson, who appeared very intoxicated. RR II 5-6. Deputy Ford decided not to arrest Williamson for public intoxication because Williamson stated that he had a sober ride coming to pick him up. RR II 6. Deputy Ford asked Williamson to sit on the curb while he waited for his ride. RR II 6.

Next, Deputy Ford noticed Petitioner's vehicle circle the parking lot a couple of times. RR II 6. Williamson indicated this vehicle as his ride. RR II 6. Deputy Ford then proceeded to flag Petitioner down by waving towards Petitioner and asking him to stop. RR II 6-7. At the moment when Deputy Ford began

1

flagging Petitioner down, Petitioner's vehicle had already passed the deputy, and it was about fifty feet away. RR II 7. However, upon observing the uniformed officer's hand signals, Petitioner complied by stopping his vehicle. RR II 8.

Deputy Ford proceeded to make contact with Petitioner in order to ascertain whether he was there to pick up Williamson. RR II 8. Ford testified that he subsequently detected the odor of an alcoholic beverage emanating from Petitioner's breath. RR II 8. Ford then signaled his trainee, Deputy Jeremy Turner, to come over to conduct an intoxication investigation. RR II 8. Based on Turner's investigation, Petitioner was arrested for DWI. RR II 9.

Regarding the law enforcement presence at Little Woodrow's at the time of Petitioner's stop, Deputy Ford testified that three deputies and one sergeant were at the scene. RR II 11. There were at least two marked police vehicles, along with a "slick top," which is a type of stealth police vehicle. RR II 11. The headlights of the police vehicles were turned on. RR II 11.

Deputy Turner testified that he was being trained at the time of this incident, and Deputy Ford was his field training officer. RR II 19-20. Turner testified that three police vehicles were on scene, and hardly anyone else was in the parking lot because the time was around 2:30 a.m. RR II 23. After Deputy Ford stopped Petitioner, Ford signaled for Deputy Turner to assist in the investigation. RR II 24. Turner testified that Ford informed him that he had flagged Petitioner down in the

parking lot. RR II 26. Furthermore, Turner testified that Ford likely had his flashlight in his hand when he stopped Petitioner. RR II 27. Deputy Turner could not recall whether the police vehicles' overhead lights were turned on. RR II 28.

The trial court filed written findings of fact and conclusions of law. CR 64. Regarding Deputy Turner's conduct in allegedly "flagging down" Petitioner, the trial court found that "Deputy Ford either flagged down or called for the driver of the vehicle to stop after the vehicle passed both Mr. Williamson and Deputy Ford." CR 64 (at Finding of Fact #8).

## ARGUMENT AND AUTHORITIES

**Because a reasonable person would not have felt free to leave after the officer signaled for him to stop, the court of appeals erred in finding that the initial interaction between Petitioner and Deputy Ford constituted a consensual encounter, as opposed to an investigative detention.**

An appellate court reviews a trial court's ruling on a motion to suppress evidence under a bifurcated standard of review. *Amador v. State,* 221 S.W.3d 666, 673 (Tex. Crim. App. 2007); *Guzman v. State,* 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). In reviewing the trial court's decision, the reviewing court does not engage in its own factual review. *Romero v. State,* 800 S.W.2d 539, 543 (Tex. Crim. App.1990). As the sole trier of fact, the trial judge is in the best position to assess the credibility of the witnesses and the weight to be given their testimony. *Wiede v. State,* 214 S.W.3d 17, 24–25 (Tex. Crim. App. 2007); *State v. Ross,* 32

3

S.W.3d 853, 855 (Tex. Crim. App. 2000), *modified on other grounds by State v. Cullen,* 195 S.W.3d 696 (Tex. Crim. App. 2006). Therefore, a reviewing court gives almost total deference to the trial court's rulings on (1) questions of historical fact, even if the trial court's determination of those facts was not based on an evaluation of credibility and demeanor, and (2) application-of-law-to-fact questions that turn on an evaluation of credibility and demeanor. *Amador,* 221 S.W.3d at 673; *Montanez v. State,* 195 S.W.3d 101, 108–09 (Tex. Crim. App.2006); *Johnson v. State,* 68 S.W.3d 644, 652–53 (Tex. Crim. App. 2002). However, when application-of-law-to-fact questions do not turn on the credibility and demeanor of the witnesses, the appellate court reviews the trial court's rulings on those questions *de novo*. *Amador,* 221 S.W.3d at 673; *Estrada v. State,* 154 S.W.3d 604, 607 (Tex. Crim. App. 2005); *Johnson,* 68 S.W.3d at 652–53. The question of whether the historical facts amount to an investigative detention under the Fourth Amendment is an issue of law that is subject to *de novo* review. *State v. Garcia-Cantu*, 253 S.W.3d 236, 241 (Tex. Crim. App. 2008).

There are three distinct categories of interactions between citizens and police officers: (1) consensual encounters, (2) investigative detentions, and (3) arrests. *Crain v. State*, 315 S.W.3d 43, 49 (Tex. Crim. App. 2010). While a consensual encounter is not subject to constitutional scrutiny, a detention constitutes a "seizure" under both the United States and Texas constitutions. *See* TEX.CONST.

4

ART. I, §9; *see also* U.S.CONST.AMEND. 4; *see also Crain*, 315 S.W.3d at 49; *see also Garcia-Cantu*, 253 S.W.3d at 242. Because an encounter is consensual by nature, a citizen is free to terminate it at any time. *Crain*, 315 S.W.3d at 49. "An encounter takes place when an officer approaches a citizen in a public place to ask questions, and the citizen is willing to listen and voluntarily answers." *Id*. Meanwhile, "an investigative detention occurs when a person yields to the police officer's show of authority under a reasonable belief that he is not free to leave." *Id*.; *see also Terry v. Ohio*, 392 U.S. 1, 19 n.16 (1968) (a seizure occurs when an officer, "by means of physical force or show of authority, has in some way restrained the liberty of a citizen").

In analyzing the question of whether a seizure has occurred, courts consider all of the circumstances surrounding the encounter. *Garcia-Cantu*, 253 S.W.3d at 242; *see also Kaupp v. Texas*, 538 U.S. 626, 629 (2003). While the officer's conduct is the primary focus of the inquiry, the time, place, and attendant circumstances are also important considerations. *Id*., at 244. "A court must step into the shoes of the defendant and determine from a common, objective perspective whether the defendant would have felt free to leave." *Id*., at 244 (quoting *United States v. Steele,* 782 F.Supp. 1301, 1309 (S.D.Ind.1992)). This reasonable-person test is both objective and fact specific; moreover, it presupposes an innocent person. *Id*., at 243.

5

A seizure has occurred if "the police conduct would have communicated to a reasonable person that the person was not free to decline the officers' requests or otherwise terminate the encounter." *Garcia-Cantu*, 253 S.W.3d at 242 (citing *Florida v. Bostick*, 501 U.S. 429, 439 (1991)). This Court succinctly describes the core issue in this type of case:

> It is the display of official authority and the implication that this authority cannot be ignored, avoided, or terminated, that results in a Fourth Amendment seizure. At bottom, the issue is whether the surroundings and the words or actions of the officer and his associates communicate the message of "We Who Must Be Obeyed."

*Id.*, at 243

Turning to the case at bar, both the court of appeals and the trial court incorrectly concluded that Deputy Ford's conduct was consistent with a consensual encounter rather than a detention. CR 65. Contrary to the courts' legal conclusions, the undisputed facts demonstrate that a reasonable person would have yielded to the officer's display of authority.

The attendant circumstances are critical in analyzing how a reasonable person would have responded to Deputy Ford's show of authority. The time was 2:30 a.m., and Petitioner was driving in a parking lot that was empty except for three police vehicles and four uniformed officers. RR II 11, 22-23. The police vehicles' headlights were on, which made the police presence obvious to any

6

reasonable person. RR II 11. Moreover, Deputy Ford probably had his flashlight in his hand when he signaled and called for Petitioner to stop his vehicle. RR II 27.

The court of appeals failed to consider the significance of the fact that Petitioner had already driven fifty feet past Deputy Ford when the deputy signaled for him to stop. CR 64 (Finding of Fact #9). If Petitioner had been driving towards the deputies, who were attending to the intoxicated Mr. Williamson, then perhaps an argument could be made that Petitioner was consenting to an encounter with the police so that he could pick up Mr. Williamson. However, Petitioner had already signaled his intent to not engage in a consensual encounter with the police, as he drove past them. The *only* reason Petitioner stopped was to obey Deputy Ford's commands (both verbal and non-verbal).

At the hearing, Deputy Ford disingenuously suggested that Petitioner was free to leave prior to his contact with him, despite the fact that he had admittedly exercised police authority by flagging Petitioner down. RR II 16. Regardless of Deputy Ford's stated beliefs, they are irrelevant because the analysis proceeds from the perspective of a reasonable person in Petitioner's shoes. Surrounded by three police officers and four police vehicles in the middle of the night, no reasonable person would have felt free to leave after Deputy Ford exercised his authority.

7

In fact, Petitioner would have committed a criminal offense if he had not obeyed Deputy Ford's show of authority. *See* TEX. TRANS. CODE §542.501 ("Obedience Required to Police Officers and to School Crossing Guards"). According to this statute, "a person may not willfully fail or refuse to comply with a lawful order or direction of a police officer." *Id.* Violating this statute gives officers authority to stop, investigate, and arrest. *See* TEX. TRANS. CODE §§543.001, 543.004 (authorizing custodial arrest for traffic offenses other than speeding or open container); *see also* TEX. CODE CRIM. PROC. ART. 14.01 (authorizing arrest for offense within an officer's presence); *see also Guinn v. State*, 1998 WL 418034, at *1 (Tex. App.—Houston[1st Dist.] 1998, no pet.) (holding that a violation of TEX. TRANS. CODE §542.501 gives officers authority to detain or arrest the violator).

Significantly, the test proceeds from the perspective of a reasonable, innocent person, yet the court of appeals failed to consider the potential consequences of non-obedience in determining that a reasonable person would have felt free to leave. *See State v. Garcia-Cantu*, 253 S.W.3d 236, 243 (Tex. Crim. App. 2008); *see also* App. B (memorandum opinion on rehearing). No innocent person would have felt free to leave in this situation, as that action would provide the police with probable cause to arrest that person pursuant to TEX.

8

TRANS. CODE §542.501. Thus, a reasonable, innocent person had but one choice: obey the officer's order.

Crain v. State is squarely on point. See 315 S.W.3d 43 (Tex. Crim. App. 2010). In that case, the officer testified that upon observing the defendant, he activated his headlights and called out to him: "Come over here and talk to me." Id., at 51. The defendant complied by taking a few steps and then stopping. Id. The officer further testified that he would have let the defendant go if he had not complied with his command, as he had not observed anything that could be construed as illegal activity. Id., at 47. Upon approaching the defendant, the officer smelled marijuana and an investigative detention ensued. Id. Emphasizing the mandatory nature of the officer's command, this Court held that an investigative detention, as opposed to a consensual encounter, had occurred. Id., at 51-52.

Judge Cochran's analysis of the difference between a "request" and an "order" is particularly applicable here:

> Under the Fourth Amendment, there is a world of difference between an officer's request and his order. A request signifies a consensual encounter beyond the purview of the Fourth Amendment; a command, if heeded, usually denotes a Fourth Amendment detention. A request is a question that asks for an answer; an order is a command which requires obedience.

Crain, 315 S.W.3d at 54-55 (Tex. Crim. App. 2010)
(Cochran, J., concurring) (citations omitted)

9

Like the officer in *Crain*, Deputy Ford issued an order when he used his hands and voice to command Petitioner to stop his vehicle. The fact that Petitioner may have only observed the officer's non-verbal hand motion does not distinguish the two fact patterns, as the issue remains whether a reasonable person would have felt free to leave. Furthermore, as in *Crain*, the officer's headlights were activated at night.

In this climate, Deputy Ford's conduct cannot be construed as a mere request that a reasonable person would have felt free to ignore. Instead, it constituted an order requiring obedience. Despite Petitioner's obvious reluctance to interact with the police, he did what any reasonable person would have done when the police ordered him to stop: he stopped.

In holding that Petitioner failed to demonstrate that the interaction between himself and Deputy Ford was anything other than a consensual encounter, the court of appeals failed to explain how this case is distinguishable from *Crain*. Because the court of appeals decided an important question of state and federal law in a manner that conflicts with the applicable decisions of this Court, this Petition for Discretionary Review should be granted. *See* TEX.R.APP.PROC. 66.3(c).

### PRAYER

WHEREFORE, PREMISES CONSIDERED, Petitioner prays that this Court grant his Petition for Discretionary Review in order to determine whether the

10

police officer's conduct in signaling for Petitioner to stop constituted a seizure, as opposed to a consensual encounter.

Respectfully submitted,

/s/ Christopher M. Perri_____
CHRISTOPHER M. PERRI
Law Office of Christopher M. Perri
1504 West Ave.
Austin, Texas 78701
Tel. (512) 917-4378
Fax (512) 474-8252
chris@chrisperrilaw.com
State Bar No. 24047769
COUNSEL FOR PETITIONER

CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing Petition for Discretionary Review was electronically transmitted to the following counsel of record for Respondent-Appellee, via the electronic filing manager, on this the 17th day of December, 2015.

Giselle Horton
Assistant Travis County Attorney
P.O. Box 1748
Austin, Texas 78767
giselle.horton@traviscountytx.gov

Lisa McMinn
State Prosecuting Attorney
P.O. Box 13046
Capitol Station

11

Austin, Texas 78711
information@spa.texas.gov

/s/ Christopher M. Perri_____
Christopher M. Perri

## CERTIFICATE OF COMPLIANCE

This is to certify that the above Petition for Discretionary Review complies with the length requirements of TEX. R. APP. PROC. 9.4(i)(2)(D) because it contains 2,422 words, not including the parts of the Petition that are excepted under TEX. R. APP. PROC. 9.4(i)(1).

/s/ Christopher M. Perri_____
Christopher M. Perri

# APPENDIX

A. Memorandum Opinion (May 21, 2015)

B. Memorandum Opinion on Rehearing (November 25, 2015)

# A.

*Memorandum Opinion (May 21, 2015)*

# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-13-00403-CR

### Joseph Timothy Shimko, Appellant

### v.

### The State of Texas, Appellee

---

### FROM THE COUNTY COURT AT LAW NO. 3 OF TRAVIS COUNTY
### NO. C-1-CR-12-215308
### HONORABLE NANCY WRIGHT HOHENGARTEN, JUDGE PRESIDING

---

## M E M O R A N D U M   O P I N I O N

Following the denial of his motion to suppress evidence, appellant Joseph Shimko pleaded no contest to driving while intoxicated. In accordance with the plea bargain, the trial court found him guilty and sentenced him to three days in the county jail and imposed a 90-day suspension of his driver's license. In his sole point of error, Shimko asserts that the trial court erred in denying his motion to suppress because the evidence was obtained as a result of an unlawful detention. We will affirm the trial court's judgment of conviction.

# BACKGROUND[1]

On September 12, 2012, at 2:30 a.m., Deputy Ford was outside a pub assisting other officers on an unrelated call. Deputy Ford saw Scott Williamson staggering in the parking lot and determined that he was intoxicated. Williamson said he had a ride home, so the officers decided not to arrest him for public intoxication and had him sit on the curb to wait for his ride. Deputy Ford saw a vehicle circling the parking lot once or twice and pointed it out to Williamson, who indicated that the vehicle was his ride home.

The vehicle passed Deputy Ford and Williamson, so Deputy Ford flagged it down. Deputy Ford could not remember whether he yelled at the driver or made some type of gesture. According to Deputy Ford, he signaled to the vehicle to ascertain whether the driver was Williamson's ride, and if the driver had ignored his signal and driven off, Deputy Ford would not have pursued the vehicle. However, the driver did stop, and when Deputy Ford approached the vehicle to inform the driver, Shimko, that Williamson was sitting on the curb, he smelled the odor of alcohol. Deputy Ford then asked Shimko to exit the vehicle and began an investigation for driving while intoxicated.

Shimko was subsequently charged with driving while intoxicated. Prior to trial, Shimko moved to suppress evidence gathered after Deputy Ford signaled for him to stop, asserting that he was unlawfully detained and that consequently the evidence against him was obtained in

---

[1] The following facts are taken from the findings of fact and conclusions of law, which the trial court made after the hearing on the motion to suppress and which are supported by the testimony given at the hearing by Deputies Jeff Ford and Jeremy Turner of the Travis County Sheriff's Office. These underlying findings of fact are not directly challenged on appeal.

2

violation of the Fourth Amendment. The trial court denied Shimko's motion because it concluded that Deputy Ford's initial interaction with Shimko was an encounter, not a detention, and that even if the interaction was a detention, Deputy Ford was acting in a community-caretaking function.[2] This appeal followed.

## STANDARD OF REVIEW

We review a trial court's ruling on a motion to suppress for abuse of discretion, using a bifurcated standard. *Goodwin v. State*, 376 S.W.3d 259, 266 (Tex. App.—Austin 2012, pet. ref'd). In doing so, we view the evidence in the light most favorable to the trial court's ruling. *Johnson v. State*, 414 S.W.3d 184, 192 (Tex. Crim. App. 2013). When the trial court makes express findings of historical fact, as it did here, we afford almost total deference to those findings as long as they are supported by the record, and we also view the findings in the light most favorable to the trial court's ruling. *State v. Granville*, 423 S.W.3d 399, 404 (Tex. Crim. App. 2014). We also give almost total deference to rulings on application of the law to questions of fact and to mixed questions of law and fact, if resolution of those questions depends on an assessment of credibility and demeanor of witnesses. *Arguellez v. State*, 409 S.W.3d 657, 662 (Tex. Crim. App. 2013). We review de novo pure questions of law and mixed questions of law and fact that do not depend on evaluating credibility and demeanor. *Martinez v. State*, 348 S.W.3d 919, 923 (Tex. Crim. App. 2011). We will affirm the trial court's ruling if the record reasonably supports it and it is correct on any theory of law applicable to the case. *State v. Duran*, 396 S.W.3d 563, 571 (Tex. Crim. App. 2013).

---

[2] Specifically, in its conclusions of law, the trial court stated that "Deputy Ford was acting in a community care-taking function with regard to Mr. Williamson," and that "Deputy Ford's conduct was consistent with a police encounter rather than a detention."

3

## DISCUSSION

An interaction between law-enforcement officers and a citizen may be categorized as a consensual encounter, an investigative detention, or an arrest. *See State v. Woodard*, 341 S.W.3d 404, 410–11 (Tex. Crim. App. 2011). Officers must have legal justification to conduct detentions and arrests, because these interactions are seizures implicating a citizen's rights under the Fourth Amendment. *Id.* at 411. If a detention occurred without a warrant, the State bears the burden of establishing that the detention was nevertheless reasonable. *Id.* at 412. The State can meet that burden by showing that the officer had reasonable suspicion that the citizen was, has been, or soon would be, engaged in criminal activity. *Id.* at 411.

Also, the United States Supreme Court has established the "community-caretaking" exception to the warrant requirement, "recognizing that police officers may contact citizens 'and engage in what, for want of a better term, may be described as community caretaking functions, totally divorced from the detection, investigation, or acquisition of evidence relating to the violation of a criminal statute.'" *Gonzales v. State*, 369 S.W.3d 851, 854 (Tex. Crim. App. 2012) (quoting *Cady v. Dombrowski*, 413 U.S. 433, 441 (1973)). The court of criminal appeals has also recognized this exception, explaining that an officer "'may stop and assist an individual whom a reasonable person, given the totality of the circumstances, would believe is in need of help.'" *Corbin v. State*, 85 S.W.3d 272, 277 (Tex. Crim. App. 2002) (italics removed, quoting *Wright v. State*, 7 S.W.3d 148, 151 (Tex. Crim. App. 1999)). Therefore, an officer acting in a community-caretaking function does not need reasonable suspicion to detain someone. *See King v. State*, No. 05-13-00178-CR, 2014 WL 2807993, at *2 (Tex. App.—Dallas June 18, 2014, no pet.) (mem. op., not designated for

4

publication) ("[E]ven without reasonable suspicion or probable cause that an offense has been committed, a police officer may reasonably stop or detain a person through the exercise of his community caretaking function.").

On appeal, Shimko argues that the trial court erred in denying his motion to suppress because his interaction with Deputy Ford was an investigative detention from the moment Deputy Ford signaled for Shimko to stop. Shimko further argues that because Deputy Ford did not have reasonable suspicion, his detention was an unreasonable and unconstitutional seizure. Finally, Shimko argues that the community-caretaking exception to the Fourth Amendment's warrant requirement is irrelevant to this case because Deputy Ford had no reason to believe that Shimko needed assistance. The State does not dispute that Deputy Ford was without reasonable suspicion to detain Shimko. Instead, the State contends that Deputy Ford's interaction with Shimko was a consensual encounter—not a detention. We will assume without deciding that Shimko's interaction with Deputy Ford was an investigative detention conducted without reasonable suspicion and will instead examine whether the community-caretaking exception applies.

To determine whether the community-caretaking exception applies, we must inquire (1) whether the officer was primarily motivated by a community-caretaking purpose and (2) whether the officer's belief that the individual needed help was reasonable. *Gonzalez*, 369 S.W.3d at 854–55. The court of criminal appeals has listed four non-exclusive factors that a court may consider in deciding whether the officer's belief that the individual needed assistance was reasonable: (1) the nature and level of distress exhibited, (2) the location, (3) whether the individual had access to assistance independent of the officer, and (4) to what extent the individual presented a danger to

5

himself and others if not assisted. *Wright*, 7 S.W.3d at 151–52. The first factor receives the greatest weight but is not always dispositive. *Gonzalez*, 369 S.W.3d at 855.

The relevant facts in this case are uncontested. Deputy Ford testified that Williamson was "very intoxicated" and that he had observed Williamson "almost trip and fall." The deputies also testified that Williamson was in the parking lot of a pub at 2:30 in the morning, where he was unlikely to receive assistance without Deputy Ford's intervention. From this testimony, the trial court could reasonably have concluded that because Williamson could barely walk, he presented a danger to himself, and if he were to try to drive, then he would also present a danger to others. Moreover, Deputy Ford testified that he made contact with Shimko "to ascertain whether or not he was, in fact, Mr. Williamson's ride," as Williamson claimed. Deputy Ford further testified that if Shimko had driven off instead of stopping, Deputy Ford would not have pursued Shimko, because he "had no reason to." Therefore, the record before us and the unchallenged findings of fact support the conclusion that: (1) Deputy Ford was primarily motivated by a community-caretaking purpose in trying to secure a sober ride for Williamson and, in furtherance of that purpose, signaled for Shimko to stop, and that (2) under the totality of the circumstances, Deputy Ford's belief that Williamson needed help, and that stopping Shimko was in the furtherance of providing that help, was reasonable.

Because the trial court could have reasonably concluded that Deputy Ford was primarily motivated by a community-caretaking purpose and that his belief that Williamson needed help was reasonable, the community-caretaking exception to the Fourth Amendment's warrant requirement applies. Therefore, even if Deputy Ford detained Shimko without reasonable suspicion,

6

the detention was constitutional, and the trial court did not abuse its discretion in denying Shimko's motion to suppress. Accordingly, we overrule Shimko's sole point of error.

## CONCLUSION

Having overruled Shimko's sole point of error, we affirm the judgment of conviction.

_____

Scott K. Field, Justice

Before Justices Pemberton, Field and Bourland

Affirmed

Filed: May 21, 2015

Do Not Publish

7

# B.

*Memorandum Opinion on Rehearing (November 25, 2015)*

# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## ON REHEARING

## NO. 03-13-00403-CR

**Joseph Timothy Shimko, Appellant**

v.

**The State of Texas, Appellee**

### FROM THE COUNTY COURT AT LAW NO. 3 OF TRAVIS COUNTY
### NO. C-1-CR-12-215308
### HONORABLE NANCY WRIGHT HOHENGARTEN, JUDGE PRESIDING

## MEMORANDUM OPINION

We withdraw the opinion and judgment dated May 21, 2015, and substitute the following opinion and judgment in their place.

Following the denial of his motion to suppress evidence, appellant Joseph Shimko pleaded no contest to driving while intoxicated. In accordance with the plea bargain, the trial court found him guilty and sentenced him to three days in the county jail and imposed a 90-day suspension of his driver's license. In his sole point of error, Shimko asserts that the trial court erred in denying his motion to suppress because the evidence was obtained as a result of an unlawful detention. We will affirm the trial court's judgment of conviction.

# BACKGROUND[1]

On September 12, 2012, at around 2:30 a.m., Deputy Ford was outside a pub assisting other officers on an unrelated call. Deputy Ford saw Scott Williamson staggering in the parking lot and determined that he was intoxicated. Williamson said he had a ride home, so the officers decided not to arrest him for public intoxication and had him sit on the curb to wait for his ride. Deputy Ford saw a vehicle circling the parking lot once or twice and pointed it out to Williamson, who indicated that the vehicle was his ride home.

The vehicle passed Deputy Ford and Williamson, so Deputy Ford flagged it down. Deputy Ford testified that he could not remember whether he yelled at the driver or made some type of gesture. According to Deputy Ford, he signaled to the vehicle to ascertain whether the driver was Williamson's ride, and if the driver had ignored his signal and driven off, Deputy Ford would not have pursued the vehicle. However, the driver did stop, and when Deputy Ford approached the vehicle to inform the driver, Shimko, that Williamson was sitting on the curb, he smelled the odor of alcohol. Deputy Ford then asked Shimko to exit the vehicle and began an investigation for driving while intoxicated.

Shimko was subsequently charged with driving while intoxicated. Prior to trial, Shimko moved to suppress evidence gathered after Deputy Ford signaled for him to stop, asserting that he was unlawfully detained and that consequently the evidence against him was obtained in

---

[1] The following facts are taken from the findings of fact and conclusions of law, which the trial court made after the hearing on the motion to suppress and which are supported by the testimony given at the hearing by Deputies Jeff Ford and Jeremy Turner of the Travis County Sheriff's Office. These underlying findings of facts are not directly challenged on appeal.

violation of the Fourth Amendment. The trial court denied Shimko's motion because it concluded that Deputy Ford's initial interaction with Shimko was an encounter, not a detention, and that even if the interaction was a detention, Deputy Ford was acting in a community-caretaking function.[2] This appeal followed.

## STANDARD OF REVIEW

We review a trial court's ruling on a motion to suppress for abuse of discretion, using a bifurcated standard. *Goodwin v. State*, 376 S.W.3d 259, 266 (Tex. App.—Austin 2012, pet. ref'd). In doing so, we view the evidence in the light most favorable to the trial court's ruling. *Johnson v. State*, 414 S.W.3d 184, 192 (Tex. Crim. App. 2013). When the trial court makes express findings of historical fact, as it did here, we afford almost total deference to those findings as long as they are supported by the record, and we also view the findings in the light most favorable to the trial court's ruling. *State v. Granville*, 423 S.W.3d 399, 404 (Tex. Crim. App. 2014). In addition, we give almost total deference to rulings on application of the law to questions of fact and to mixed questions of law and fact, if resolution of those questions depends on an assessment of credibility and demeanor of witnesses. *Arguellez v. State*, 409 S.W.3d 657, 662 (Tex. Crim. App. 2013). We review de novo pure questions of law and mixed questions of law and fact that do not depend on evaluating credibility and demeanor. *Martinez v. State*, 348 S.W.3d 919, 923 (Tex. Crim. App. 2011). Whether the facts surrounding the interaction between an officer and a citizen, so established,

---

[2] Specifically, in its conclusions of law, the trial court stated that "Deputy Ford was acting in a community care-taking function with regard to Mr. Williamson," and that "Deputy Ford's conduct was consistent with a police encounter rather than a detention."

3

constitute a consensual encounter or a Fourth Amendment detention is subject to de novo review. *Johnson*, 414 S.W.3d at 192.

## DISCUSSION

An interaction between law-enforcement officers and a citizen may be categorized as a consensual encounter, an investigative detention, or an arrest. *See State v. Woodard*, 341 S.W.3d 404, 410–11 (Tex. Crim. App. 2011). A consensual encounter takes place when an officer approaches a citizen in a public place to ask for information or their cooperation, and the citizen is willing to listen and voluntarily answers. *Crain v. State*, 315 S.W.3d 43, 49 (Tex. Crim. App. 2010). Officers may be "as aggressive as the pushy Fuller-brush man at the front door, the insistent panhandler on the street, or the grimacing street-corner car-window squeegee man." *State v. Garcia-Cantu*, 253 S.W.3d 236, 243 (Tex. Crim. App. 2008). Consensual encounters may involve embarrassment and inconvenience but not official coercion. *Id.*

An investigative detention occurs when a citizen yields to a police officer's "show of authority under a reasonable belief that he is not free to leave." *Crain*, 315 S.W.3d at 49. Officers must have legal justification to conduct detentions, which constitute seizures implicating a citizen's rights under the Fourth Amendment. *Woodard*, 341 S.W.3d at 411. To determine whether an interaction between an officer and a citizen rises to an investigative detention, we must focus on whether "the officer conveyed a message that compliance with the officer's request was required." *Crain*, 315 S.W.3d at 51. The test is whether a reasonable person in the citizen's position "would have felt free to decline the officer's requests or otherwise terminate the encounter." *Id.* The "reasonable person" is assumed "to have considerable fortitude." *Wade v. State*, 422 S.W.3d 661,

667 n.19 (Tex. Crim. App. 2013). She knows her rights and feels free to exercise them; is not intimidated by the police; and "rests secure in the knowledge that . . . the police cannot legally draw an inference of criminality" from her refusal to cooperate. *Id.* (quoting Daniel J. Steinbock, *The Wrong Line Between Freedom and Restraint: The Unreality, Obscurity, and Incivility of the Fourth Amendment Consensual Encounter Doctrine*, 38 San Diego L. Rev. 507, 563 (2001)).

In making the determination, we must look at the totality of the circumstances. *Id.* at 49. Surrounding circumstances, including time and place, are "taken into account," but the most important factor is the officer's conduct. *Woodard*, 341 S.W.3d at 411. Circumstances that may indicate a Fourth-Amendment seizure "include the threatening presence of several officers, the officer's display of a weapon, physical touching of the citizen by the officer, the officer's words or tone of voice indicating that compliance with the officer's requests might be compelled, or flashing lights or blocking a suspect's vehicle." *State v. Woodard*, 314 S.W.3d 86, 94 (Tex. App.—Fort Worth 2010), *aff'd*, 341 S.W.3d 404 (Tex. Crim. App. 2011) (citing *United States v. Mendenhall*, 446 U.S. 544, 554 (1980)). "Absent this type of evidence, however, otherwise inoffensive conduct between a citizen and a police officer cannot, as a matter of law, amount to a seizure of that person." *Id.*

On appeal, Shimko argues that the trial court erred in denying his motion to suppress because his interaction with Deputy Ford was an investigative detention from the moment Deputy Ford signaled for Shimko to stop. As the party moving to suppress evidence, Shimko bore the burden of establishing a basis for his Fourth-Amendment claim. *See State v. Mercado*, 972 S.W.2d 75, 78 (Tex. Crim. App. 1998) (per curiam) ("The party bringing the motion to suppress bears the burden of establishing all of the elements of her Fourth Amendment claim.").

5

At the pretrial hearing on the motion to suppress, Deputy Ford at first testified that he flagged Shimko down and "kind of waved and asked Mr. Shimko to stop." When pressed as to the exact language or gestures he used, Deputy Ford testified, "I just raised my hand and asked him to stop. And I'm not real clear on how—whether I yelled out or whether I made some type of gesture." Ultimately, Deputy Ford admitted, "I'm just not sure. I'm not sure how I did it. I know that whatever method I used, I know that he did stop." The trial court in its findings of fact found that Deputy Ford "either flagged down or called for the driver of the vehicle to stop." Deputy Turner acknowledged that he "did not see or hear what Deputy Ford said or did to get Mr. Shimko to stop his vehicle."

Having considered Deputy Ford's testimony and the circumstances surrounding the interaction, we conclude that Shimko has failed to carry his burden of establishing a Fourth-Amendment claim by demonstrating that his interaction with Deputy Ford was an investigative detention. Deputy Ford testified that he made contact with Shimko solely "to ascertain whether or not he was, in fact, Mr. Williamson's ride." Deputy Ford further testified that he would have had no reason to pursue Shimko if Shimko had ignored his signal and driven off. In addition, Deputies Ford and Turner testified that when Deputy Ford signaled Shimko, the other officers were busy impounding a vehicle and were uninvolved in the interaction. Deputy Ford also testified that none of the police vehicles had their overhead lights on and that he probably did not have a flashlight in his hand when he signaled Shimko.

Based on the record before us, we cannot conclude Deputy Ford's words or actions amounted to "a display of official authority and the implication that this authority cannot be ignored,

6

avoided, or terminated." *Garcia-Cantu*, 253 S.W.3d at 243. Because Shimko has not demonstrated that the interaction between Deputy Ford and Shimko was anything other than a consensual encounter, he has failed to carry his burden of establishing a Fourth-Amendment claim. *See Mercado*, 972 S.W.2d at 78. Accordingly, the trial court did not abuse its discretion in denying his motion to suppress. We therefore overrule Shimko's sole point of error.

## CONCLUSION

Having overruled Shimko's sole point of error, we affirm the trial court's judgment of conviction.

_____

Scott K. Field, Justice

Before Justices Pemberton, Field, and Bourland

Affirmed on Rehearing

Filed: November 25, 2015

Do Not Publish

7